RIDDLE ORUM v. STATE.

No. A-6879.   Opinion Filed Nov. 16, 1929.
(282 Pac. 899.)

Thomas Norman and Champion, Champion & Fischl, for plaintiff in error.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was jointly informed against with Bill Orum, Orville Shrader, Alva Welch, Jim Hockersmith, Arnold Cornelison, Pat Orum, and Dwight Davis; was tried separately, convicted, and sentenced to imprisonment in the state penitentiary at McAlester for a term of five years.   Record was saved, and the defendant has appealed to this court.

After the jury was impaneled, the state called A. W. McCord as its first witness, who stated that he was a gauger for the Roxanna Petroleum Company; that he drove a car belonging to the Roxanna Petroleum Corporation to

Wilson on the 24th day of August, 1926, and parked on the main street near the Hub Restaurant; about 9 o'clock that night he returned to get the car and it was gone. The car had Red Top Fisk casings on it. They were 30x3½ oversized. The defendant objected to the introduction of the testimony and moved the court to strike the same because the complaint alleges the Roxanna Petroleum Company and the proof shows it was the Roxanna Petroleum Corporation. The county attorney then asked to amend the information by substituting the word "corporation" instead of "company," to which the defendant objected, and the court permitted the amendment to be made to the information, showing that the car alleged to be stolen was the property of the Roxanna Petroleum Corporation.

E. A. Stallings was called by the state, and testified that one of the casings issued to the witness McCord for use on this automobile was R. C. 1900-904; that the engine number on the car was 13,043,601; that the car had a peculiar kind of battery box on it, and that after the car had been stolen Dan Blackburn brought back the front axle, body, and storage battery, together with some Roxanna seals. The witness further testified that of the things brought back by Dan Blackburn he thought he recognized the battery box, which was identical with 15 or 20 other battery boxes specially constructed by Mr. McGhee, their carpenter, for the Roxanna Petroleum Corporation.

Arthur Smith testified, in substance, to being an employee of the Lone Star Gas Company;

"On August 26, I discovered a 1926 Ford roadster about two miles southwest of the Lone Star Camp; it had been partially destroyed by burning; I told Dan Blackburn about this; when I found the car it had a motor in it; when Dan Blackburn came out to look at the car the motor had been removed; I had no way of telling whether

this car was the car that had been stolen from the Roxanna Petroleum Corporation or not."

Arnold Cornelison, called as a witness for the state, and who was one of the defendants informed against, stated that Jim Hockersmith went to Lebanon, Okla., to attend the funeral of his brother, which was some time the latter part of the month of August; after the funeral Hockersmith returned to his home in Carter county;

"Pat Orum, Riddle Orum, Bill Orum, Orville Shrader, and myself stayed at Jim Hockersmith's house that night; early the next morning a man by the name of Alva Welch came; shortly after he came up Pat Orum and Jim Hockersmith left to get some groceries and returned with Riddle Orum and Alva Welch; when they left they were driving a stripped down racer automobile driven by Riddle Orum; when they returned they brought with them a Ford car motor, the rear end and front axle of a car; Riddle told me he would give me a dollar to take this rear end and front axle and unload it from the car west of the Hockersmith house; shortly thereafter I took the rear end and front axle and unloaded them. Bill Orum, Pat Orum, and Riddle Orum took the car motor which they had brought to Hockersmith's house away with them."

Dan Blackburn testified, in substance, that he was a special officer for the Roxanna Petroleum Corporation;

"A few days after the theft of the car in question, I was shown an automobile out northwest of Healdton; the car was a 1926 model Ford roadster, which had been burned; there were no casings on the car, and the motor had been removed as well as the rear end and front axle; near this burned car we found some fresh car tracks, and followed them five miles to the Hockersmith home; in the ashes of the partly destroyed car I found some Roxanna Petroleum Corporation seals; I searched the Hockersmith premises, and in a spring some 100 yards from the house I found the rear end, and about 100 yards south of there the front axle and the wheel of a Ford; I found

a Ford motor about 2½ miles from the defendant Riddle Orum's house, two days later, and on one of the wheels of Riddle Orum's car I found a Red Top Fisk casing No. B. C. 1900-904."

Ike Wright testified that he and A. D. Smith found the burned car on the road and advised Dan Blackburn of its whereabouts.

A. W. McCord was recalled, and stated he saw the body of the car which Mr. Blackburn brought in, and that it resembled the body of the car that had been taken without the knowledge or consent of any one connected with the company; that he saw some Roxanna Corporation seals that Mr. Blackburn brought back, and they were the same kind of seals he had used as gauger for the company, and the same kind of seals he had with him at the time the car was stolen.

George Shrader testified that some time in August or September Dan Blackburn and Bob Short came to his house and examined a Red Top Fisk casing on a stripped down Ford that belonged to the defendant Riddle Orum.

Bob Short testified he was a deputy sheriff of Carter county; that while investigating the theft of the Roxanna Petroleum Corporation car he found a green stripped down racer car, the property of the defendant Riddle Orum, which had a Red Top Fisk casing on the left wheel, numbered B. C. 1900-904; in the car was a battery box and motor hanger.

E. A. Stallings, recalled, testified that the casing number which he testified in his former testimony should be B. C. 1900-904, instead of R. C.

The state further showed by testimony that the number on the motor had been changed and other numbers placed on the car.

At the close of the testimony of the state, the defendant demurred to the testimony, his demurrer was overruled, and defendant saved an exception.

He then requested the court to instruct the jury as follows:

"You are instructed to return a verdict of not guilty," which instruction was refused, and defendant saved an exception. The defendant did not offer any testimony.

We will consider the assignments of the defendant we deem necessary to consider, as they appear in the petition in error. In his first assignment the defendant insisted that the court erred in overruling his objection to the introduction of any evidence under the information; second, that the court erred in overruling plaintiff in error's objection to the introduction of any evidence to the effect that the automobile claimed to have been stolen was the property of the Roxanna Petroleum Corporation; and, third, that the court erred in overruling his objection to the county attorney amending the information during the trial of the case, after the jury had been impaneled and the presenting of the evidence commenced.

An examination of the information shows that it charged the owner of the automobile alleged to have been stolen to be Roxanna Petroleum Company; when the state began to take its testimony its first witness stated that the property belonged to the Roxanna Petroleum Corporation; when this was discovered the defendant objected to the taking of any testimony, for the reason that the proof did not conform to the allegations in the information, and he now urges that the action of the court in permitting the state to amend the information by charging the ownership of the property to be in the Roxanna Petroleum Corporation instead of the Roxanna Petroleum Company

was an error—the amendment being, the word "company" was stricken out and the word "corporation" substituted.

Section 2560, C. O. S. 1921, is as follows:

"When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material."

Under the provisions of section 2560, supra, we do not think the court erred in permitting the county attorney to amend the information by striking out the word "company" and inserting the word "corporation," as the defendant was not deceived thereby. The amendment, we think, did not prejudice the rights of the defendant and did not deprive him of having a fair and impartial trial. Leyerle v. State, 31 Okla. Cr. 179, 237 Pac. 871, and other cases therein cited.

It is contended by the defendant that the court erred in overruling his motion to withdraw his announcement of ready for trial after the amendment to said information, and allow the plaintiff in error further time in which to plead, for the reason that said amendment came as a surprise to the plaintiff in error. We think this contention is without merit, as there is nothing in the record to show that the defendant was in any way whatever prejudiced by the amendment.

The fifth and sixth assignments relate to the action of the court in overruling plaintiff in error's demurrer to the evidence, and refusing to direct the jury to return a verdict of not guilty. This court has held many times that when there was any evidence upon which the jury could base a verdict, this court would not reverse the judgment on account of the insufficiency of the evidence. The ques-

tion as to the weight of the evidence is a question for the jury, and we think that the evidence on behalf of the state, if believed by the jury, was sufficient to sustain a conviction.

In the case of West v. State, 19 Okla. Cr. 355, 198 Pac. 99, 100, this court laid down the following rule:

"The rule in this state is that the presumption arising from the possession of recently stolen property, to wit, that the possessor is the thief, is one of fact, and not of law. If the possession is unexplained, or is unsatisfactorily explained, the evidence is sufficient to sustain a conviction for larceny, the inferences arising from such possession being for the jury to determine."

In this case the testimony shows that the defendant was in possession of one of the casings that was on the car when it was taken, and that within a short distance from his home a motor was found, and that he hired the witness Cornelison to take certain parts of the car and throw them away at the Hockersmith home. This evidence was before the jury under the proper instructions of the court.

In Browning v. State, 31 Okla. Cr. 373, 239 Pac. 272, in the second paragraph of the syllabus, this court said:

"Where there is evidence from which the jury may reasonably and logically find the defendant guilty of the crime charged, in the absence of unusual circumstances, this court will not set aside the jury's verdict on account of insufficiency of the evidence."

In Tennison v. State, 32 Okla. Cr. 257, 240 Pac. 323, this court said:

"Where the evidence is conflicting, and that in behalf of the prosecution such that if believed by the jury a verdict of guilty should result, a judgment of conviction will

not be reversed on the ground that the verdict is contrary to the evidence."

After a careful examination of the evidence contained in the record, we hold that there is sufficient testimony to justify the jury in returning a verdict of guilty. Upon an examination of the other errors assigned, they are not of sufficient merit to warrant the court in reversing the case.

The judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.