# FLOWERS v. STATE.

### No. A-11513. Dec. 5, 1951.

(238 P. 2d 841.)

Donald M. Flowers, pro se.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J. The plaintiff in error, Donald M. Flowers, who will hereinafter be referred to as defendant, was charged by information filed in the district court of Kay county, Oklahoma, with the crime of kidnapping. By provision of Tit. 21 O. S. 1941 § 745, the penalty on conviction might be fixed at death, or imprisonment in the penitentiary for not less than ten years. Defendant was tried before a jury, convicted and his punishment assessed at imprisonment in the State Penitentiary for a period of 20 years.

A further history of this case seems required. The charge for which defendant was convicted was originally commenced on the 20th day of January, 1948, by the filing of a complaint or preliminary information in the county court of Kay county, wherein the judge was sitting as an examining magistrate. The record reflects that the matter came on for hearing on January 26, 1948, and that the defendant was fully advised of his right to be advised by counsel and of his right to have a preliminary examination, but that he specifically waived such examination and was bound over to the district court for trial. On January 30, 1948, the defendant entered a plea of guilty to the charge of kidnapping, and was sentenced by the court to serve a term of twenty years in the State Penitentiary.

The defendant thereafter appealed this case to this court and also sought release by application for a writ of habeas corpus. The cases were consolidated under No. A-11110, Flowers v. State, and Ex parte Flowers, 90 Okla. Cr. 390, 214 P. 2d 728. The defendant by various affidavits claimed that he entered his plea of guilty under duress of a deputy sheriff by the name of Mead, whom he claimed had beaten, threatened, and severely injured him. Complaint was made particularly to an order of the trial court refusing to permit defendant to withdraw his plea of guilty and to enter a plea of not guilty, and to be permitted a trial by jury.

By reason of the defendant not being represented by counsel, and on account of the mixup and conflict in the records of the medical department at the State Penitentiary, and for other reasons fully set out in the opinion above, though defendant was not without experience in court matters, having previously served in the penitentiary, In re Flowers, 71 Okla. Cr. 330, 111 P. 2d 509, this court reversed the conviction and ordered that defendant be granted a new trial, not only on the kidnapping charge, but also on the charge of burglary to which he had also pleaded guilty and was sentenced to serve a five-year sentence concurrently with the twenty-year sentence. The order provided that the judgment and sentence in criminal cases No. 3489 and No. 3490, and all proceedings in said cases subsequent to the filing of the information against the accused be vacated and set aside.

Following the opinion of this court above referred to, the defendant was returned to Kay county and the district judge appointed attorneys John H. Hill and Chester Armstrong, Jr., at state expense, to defend him. From the subsequent conviction, above stated, defendant has lodged the present appeal.

On trial the defendant did not testify or offer any evidence.

The evidence on behalf of the state developed that prior to January 13, 1948, defendant was held in the county jail of Kay county awaiting trial on a burglary charge. During the night of January 12-13, 1948, defendant succeeded in escaping from the said jail and took with him a .41 calibre Colt pistol from the safe at the jail office, as well as a pocket book belonging to Bob Pond, a jailer there. Pond's automobile also disappeared at the same time, but was subsequently found a few miles away, stuck in a ditch.

Donald Dorf, a farmer who lived a mile north and three miles west of Newkirk with his wife and infant son, was awakened around 1:30 the morning of January 13, 1948, by a man outside the house who said he was out of gas, and wanted to know if witness could let him have some. Dorf and wife decided to furnish this man some gas to help him out of his difficulty, and Dorf commenced to dress, but in the meantime the stranger asked if he could come in and warm, as it was cold outside. When the door was opened defendant was the man who came in. Dorf and defendant soon went outside to the gas barrel, and Dorf commenced pouring gas in a can, but defendant insisted that he had poured enough before witness had poured any appreciable amount. Defendant asked Dorf to drive him to where his car was stalled, and Dorf agreed to do so, and so advised his wife. He got his 1934 model car and began to drive but after they proceeded only a short distance, defendant brandished a gun, later shown to be the .41 Colt stolen from the sheriff's office, and told Dorf it was a "holdup". Dorf was very frightened and defendant cautioned him: "Just control yourself, I'm not going to hurt you", and told him: "We're just going for a ride." Dorf did not understand the significance of that remark and was frightened more than ever, and asked defendant if he was going to hurt him, and defendant told him: "Oh, if you break and run or holler I might take a shot at you."

Dorf testified that by reason of the display of the gun and the commands of defendant and fearing injury or death if he did not comply, he drove defendant across country roads to Blackwell, where Dorf was directed to stop at a house and to go to the door for the purpose of purchasing a pint of whiskey with a ten-dollar bill handed him by the defendant, and also that he was directed by defendant to ask for one Andy Rothrock. The man who answered the door refused to sell any whiskey and stated that Rothrock was at the Blackwell Rooms. Defendant remained in the car but was close enough to hear and did hear the conversation at the door of the house.

Defendant then directed Dorf to drive him to Tonkawa, but after getting there he decided that he wanted to go to Perry, so Dorf proceeded to drive him there.

On arrival at the outskirts of town, defendant said to Dorf: "If I would just step out would you turn around and go home and not say anything?" Dorf answered: "Mister, that would tickle me to death." He had previously tried to turn his car over to defendant if defendant would just put him out on the highway. Defendant got out at some tourist courts and gave Dorf $1 to purchase some gasoline to enable him to drive on. Dorf then drove through Tonkawa, through Blackwell, and back on highway 11, and soon the Ponca City police stopped him. They asked him where he left his passenger, Dorf's wife having previously reported her husband's disappearance with the stranger, and he told them at Perry, and they then directed Dorf to drive to the court house at Newkirk, and they 'phoned his wife that he was safe.

Oscar Dozier, chief of police of Perry, testified that he went to a tourist court at Perry around 6:30 a.m., January 13, 1948, that Officer Hunt knocked on the door and told defendant to come out with his hands up, which he eventually did. Witness stated that they then searched the cabin and that: "There was a pistol under the pillow on the bed, and we found a couple of little boxes that had some pills." He then identified State's exhibit "1" as the gun found.

Fred Boyse of the Perry motor patrol testified substantially as Chief Dozier, and also identified the gun, but stated that it was a .41 calibre rather than a .38.

Harry Bain, chief of police at Newkirk, testified that on the morning of January 13, 1948, he, Deputy Sheriff Mead and Officers Hays and Vanetten went in Mead's car toward Perry to look for defendant, Mr. Dorf having told officers at the Newkirk court house that he had let defendant out of his car there, but on the way they met a highway patrol car, and Deputy Mead was recognized and the patrol car stopped and defendant was turned over to Mr. Mead, together with a pistol and two small medicine boxes. Witness identified the pistol and stated that it was a .41 calibre. Witness was asked if there was any conversation with defendant, and he stated:

"A. He said, 'Mr. Mead', he said, 'I will go gack and take 20 years and start on it now.' He said, 'I am willing to go back to Newkirk and drop out for 20 years and start it.' Q. Then did you take him on back? A. We brought him back to Ponca City and Mr. Mead went to the police department, and Mr. Hays and Mr. Flowers and I sat there possibly five minutes and then we came on back to Newkirk, he had the keys, or he had had the keys to the jail. We asked him what he did with them, and he said he had thrown them away. We went back out to Mr. Voegley's farm and Mr. Hays and Mr. Flowers crawled over the fence and went approximately a quarter of a mile over to another fence row, and recovered the keys and came back to the car and we brought him back to the jail."

Deputy Sheriff Harold J. Mead testified substantially as had Officer Bain and he also identified the gun and stated that it had been left in the safe of the sheriff's office at Newkirk and that it was turned over to him together with two boxes of "dope" when the prisoner was turned over to him. Witness was particularly cross-examined as to whether he induced defendant to make the statements that he did, made him any promises, etc., but he steadfastly denied promising defendant anything, or threatening him, striking him, kicking him, or molesting him in any way. Counsel over the objection of the county attorney asked: "Prior to that time, prior to the time that he went out there that night, had you ever harmed him or struck him or beat him?" He answered that he had not, and had not threatened him.

From the evidence we are not able to determine whether the pistol was actually loaded at time it was taken into custody or not.

A number of other witnesses testified, but the evidence was more or less cumulative. Charley Shidler, the jailer at Newkirk, did further identify the pistol

in question as having the number "913" on the catch that holds the magazine and as having a broken place, and that the calibre was .41, instead of .38: The court on motion of the county attorney permitted the information to be amended to conform to the proof. Prior to trial the information had been amended by adding: "something of value or" in the charging part.

For reversal, the principal contention is that defendant was denied due process of law by being denied the right to have a preliminary examination, citing art. II, § 17, of the Bill of Rights of the Oklahoma Constitution.

While it is well settled that a person charged with a felony has a right to have a preliminary examination, the constitutional provision above referred to also provides that this right may be waived. Art. II, § 17, Const. of Oklahoma; Ables v. State, 35 Okla. Cr. 26, 247 P. 423; Ex parte Pruitt, 89 Okla. Cr. 312, 207 P. 2d 337.

Under mandate of Flowers v. State, supra, the trial court was under the duty to proceed in this case after the filing of the information. The court there found no evidence to indicate that the defendant was in any way coerced into waiving a preliminary examination. This court did think that the defendant should have been permitted to withdraw his plea of guilty and to be tried before a jury and to be represented by counsel. Consideration was given to ex parte affidavits in the above case, jumbled and conflicting prison records submitted by defendant, but after reversal when the case came on for trial before the jury defendant offered no evidence to show coercion, promises, threats and beatings. The fact is, the record is entirely to the contrary.

It is complained that it was error on the part of the court to permit the information to be amended, and that in any event permitting amendment entitled defendant to a preliminary hearing on the amended information.

Tit. 22 O. S. 1941 § 304 reads:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

See Ex parte Conway, 84 Okla. Cr. 118, 179 P. 2d 699; Butler v. State, 78 Okla. Cr. 133, 145 P. 2d 215; Williams v. State, 89 Okla. Cr. 146, 205 P. 2d 1164; Orum v. State, 45 Okla. Cr. 193, 282 P. 899; Saxon v. State, 19 Okla. Cr. 58, 198 P. 107.

In the case of Ex parte Conway, supra, we said:

"Where an information charging a felony is amended, and the charge in the amended information is substantially the same as the charge in the preliminary complaint before the committing magistrate, the contention that accused should have a right to preliminary hearing on the amended information is untenable."

We find from an examination of the preliminary information, the original information and amended information, that all these documents charged substantially the same offense.

We further note that no motion to quash or set aside either the original information or the amended information was ever filed. See Ex parte Owen, 82 Okla. Cr. 415, 171 P. 2d 868; Ex parte Pruitt, supra; Ex parte Miller, 82 Okla. Cr. 315, 169 P. 2d 574; Landon v. State, 82 Okla. Cr. 336, 166 P. 2d 781. In the first case we said:

"The manner of challenging jurisdiction because no preliminary examination was had is by motion to quash or set aside the information before entering a plea on the merits."

Defendant next complains of the instructions given by the court, and particularly that the court failed to give the instruction requested by the defendant. The requested instruction advised the jury that the penalty for the crime charged is "not exceeding ten years", when by the provision of Tit. 21 O. S. 1941 § 745, as amended, the penalty is set forth at "not less than ten years". The court gave the proper instruction covering the penalty, and in fact we find that the instructions as a whole fairly submitted the issues.

It is contended that the punishment was excessive, particularly when the evidence is undisputed that defendant did not harm Dorf, the farmer whom he forced to assist in his escape. No doubt all that was taken into consideration as the maximum punishment was death.

Defendant was given every opportunity to interpose a defense to the charge. Apparently he had no defense and his only hope all along had been to escape punishment through technicalities. The state has been put to great expense, and the result is that defendant must serve a longer period in the penitentiary than he would have in the beginning, as his term must be figured from the time of entry of the judgment in the within case, if defendant was in custody of the warden at that time, otherwise, when delivered to the warden.

In brief defendant is very careless of the facts disclosed by the record. He states:

" * * * to that extent the information does not speak the truth as to its contents affecting the purpose of extorting said use of an automobile from one Donald Dorf, and described as of such value therefore said or such reason to avoid trial upon which the State at such time did not have any evidence whatever to convict appellant, and did not even attempt to try for such reason after the reversal thereof said forced plea of guilty by the Criminal Court of Appeals, and therefore it could not be legally said appellant sought to avoid such a trial as described therein, and did extort the use of said automobile for such purpose as a thing of value."

We take judicial knowledge of the fact that the case of Flowers v. State, No. A-11,619, filed in this court on July 30, 1951, is an appeal from a conviction of the defendant in the district court of Kay county of the charge of burglary for which defendant was being held at the time of his escape from jail there, and the kidnapping of Donald Dorf to aid him in getting away.

Having carefully studied the record in addition to the brief of defendant, which was pro se and not prepared by an attorney, and was not always coherent, and finding no violation of a substantial right of the defendant and no merit in the appeal, the case is affirmed.

BRETT, P. J., and JONES, J., concur.