### PARKER v. STATE.
#### No. A–11998.

Criminal Court of Appeals of Oklahoma.
June 10, 1954.

Rehearing Denied Sept. 8, 1954.

Hardin Ballard, Purcell, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

JONES, Judge.

The defendant, Sid Parker, was charged by an information filed in the County Court of McClain County with the offense of pointing a pistol at another, was tried, convicted, and sentenced to pay a fine of $50 and serve a term of 90 days in the county jail.

Two propositions are presented on appeal. (1) The trial court committed reversible error in not granting the defend-

ant time to plead to the amended information. (2) The trial court did not cover the issues of the case in his instructions to the jury and gave erroneous instructions.

As regards the first proposition, the record shows that an information was filed on August 21, 1952, in which it alleged that defendant pointed a pistol "at and toward Carl Weldon Haynes, Carol Rolen and Lewis Wayne Haynes." Upon arraignment of defendant on August 21, 1952, he entered his plea of not guilty.

In Lawrence v. State, 39 Okl.Cr. 229, 264 P. 214, this court held that an information charging the pointing of a deadly weapon at two or more individuals was bad for duplicity. In conformity to that decision, on February 14, 1953, the County Attorney filed a motion to amend the original information by striking the names of Lewis Wayne Haynes and Carol Rolen and an order was entered on the same date permitting such to be done. Thereafter, on February 16, 1953, the County Attorney filed an amended information identical in wording with the original information with the exception that the defendant was charged with pointing a weapon at Carl Weldon Haynes instead of three individuals which were named in the original information. So far as the record discloses, no notice was given to the defendant of the filing of the amended information. At the time the case came on for trial on May 25, 1953, counsel for the accused asked permission to withdraw his plea of not guilty for the purpose of filing a demurrer to the amended information. This request was granted. The demurrer was filed and overruled. Thereafter counsel for the accused sought additional time in which to plead further to the information and the request was denied. Counsel for the accused then moved for a continuance because of the filing of the amended information, which motion was overruled and the case proceeded to trial.

It is the contention of counsel for the accused that the filing of an amended information amounted to the filing of a new information and that he was automatically entitled as a matter of law to additional time in which to plead to the amended information and to a continuance in order to meet the issues presented by the amended information.

■ By statute it is provided:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit." 22 O.S. 1951 § 304.

In construing this statute, this court has held that it was not error to permit a County Attorney to amend the information in a matter of form or substance, where the same can be done without material injury to the defendant, even though the trial may have begun. Orum v. State, 45 Okl.Cr. 193, 282 P. 899; Herren v. State, 72 Okl.Cr. 254, 115 P.2d 258.

■ Also, in construing the above statute, this court has held, "that if the amendment is one of substance so that it charges a new crime, or where the amendment has the effect of charging a crime where the information never had charged any offense prior to the amendment, that it was error for the court not to rearraign the defendant and give him the statutory time in which to plead to the new charge. Trent v. State, 66 Okl.Cr. 302, 91 P.2d 790; Potts v. State [72 Okl.Cr. 91], 113 P.2d 839". Herren v. State, 72 Okl.Cr. 266, 115 P.2d 264.

In Herren v. State, supra, this court stated, "an amendment under some circumstances and facts might be one of substance; but at the same time the defendant would not be misled, and it would not have the effect of confusing the defendant as to the nature of the charge against him. * * * The defendant makes no affidavit as required by § 2830, supra, which would require a delay of the trial. Evidently it is the theory of defendant that the amendment is one of substance, which automatically entitles the defendant to a continuance without any showing as to prejudice or surprise."

In Hill v. State, 46 Okl.Cr. 56, 287 P. 1080 and White v. State, 23 Okl.Cr. 198, 214 P. 202, this court sustained the action of the trial court in permitting amendments in substance made to the information after the trial had begun, on the ground that defendant had not suffered material injury. In the instant case no affidavit was filed pursuant to the statute which would have required the court to continue the case, and we are unable to perceive any reasonable ground for holding that the trial court erred in not granting additional time to plead to the amended information or that he erred in denying a continuance.

The proof of the State showed that about 10:00 P.M. on August 16, 1952, Carl Weldon Haynes and Lewis Haynes with their two wives, Iva Haynes and Mary Frances Haynes, had taken a Mrs. Tucker to her home which was located on a blind section line on the county line of McClain and Garvin counties. While they were returning to the highway, a pickup automobile parked across the section line road, blocking it so that the Haynes car could not pass. One Bradford Perry jumped from the pickup and ran to the Haynes car and said, "What are you damn boys doing, stealing our watermelons?" and Carl Haynes stated, "There ain't nobody accuses me of stealing watermelons," and Haynes started getting out of his car. Perry stated, "There ain't no young punks going to jump on me. I'll just blow your guts out," and Perry started running toward the pickup, whereupon the defendant, Sid Parker, jumped out of the pickup and ran to the Haynes car and said, "I'll blow your ——— ——— guts out. Nobody's going to jump onto an old man." About that time, Lewis Haynes got out of the car and stated, "You know we haven't been down here stealing your watermelons. I've got a patch myself, and you know if we wanted any watermelons, we could get all we want." Parker then said, "You big doublejointed s—o—b, I'll blow your guts out too." A profane verbal battle apparently ensued between the defendant and the Haynes party with the State's witnesses testifying that the defendant continued to curse and abuse them and pointed his pistol at each

of them; that he made three attempts to hit one Carol Rolen, who had walked up during the controversy, with a gun but failed; that finally, after considerable argument and upon request of one of the women, the defendant moved his pickup and permitted them to pass.

On behalf of the defendant, Bradford Perry testified that he was 60 years of age and raised watermelons on a place adjacent to the blind road where the controversy occurred with the Haynes in August, 1952. That Sid Parker also had a watermelon patch across the road, and that each of them had been having trouble with boys raiding their melon patches. That on the night in question Perry and Parker were watching their melon patches when a car passed and drove down to the end of the blind section and turned and started out; that the car stopped down the road and Parker drove his car up to about 10 feet of the other car and Perry got out and said, "Where have you been back over in there?" and that one of the boys in the front seat said, "It's none of your business," that Weldon Haynes then said that he, Perry, was the one who had caused him trouble the year before by accusing him of stealing his melons and Weldon Haynes got out of his car and started to strike Perry and Perry ran back to the pickup to get a shotgun. That the defendant got out of his car and stopped Weldon Haynes and then when he recognized him, apologized. That Sid Parker had a pistol but never did point it at anyone. That when Carol Rolen threatened to strike Parker and called him a s—o—b, the defendant, Parker, drew his gun back to hit him but never did strike Rolen.

The defendant, Parker, testified that Weldon Haynes told Perry it wasn't any of his business what they were doing on the road. He further testified: "He told him, 'You're the damn fellow that caused me the trouble last year.' And when he said that he came out of the car. Brad run back up to the car after his gun, and knowing him like I do, I knew he wasn't going to mess with these Haynes boy, and I didn't want Brad Perry to kill one of them. I came up and told him, 'Don't do nothing you will be sorry of, Brad.' About that time the big

red-headed Haynes boy came out of the car, and, well, he just unwound like he was coming around to beat the old man up when I got around there, and I told him, I said, 'You big double-jointed s—o—b, you aren't fixing to hit that old man.' He said, 'Sid, I don't like to be called a s—o—b.' I said, 'Wayne, I'm sorry I called you that, because you have a good mother.' And he has. And about this time his wife came around there and said, 'Sid, don't you know it's against the law to hit a minor.' This little old Rolen kid came up from my left, and he said, 'No, that goddam yellow dirty s—o—b ain't going to hit nobody.' Well, that made me hot. It just flew all over me. I had the end of the gun in my hand, and I hit at him with the handle of the gun. Brad come up and said, 'Sid, come on, come on, Sid, let's go.' And I took him at his word. I knew we had already done too much. We didn't know who those kids were when we stopped them down there. If they had ever hit at the old man, he would have killed them. I didn't want any trouble with them. They are all just kids. They have been raised there. When they go off and want a job, they give me for a reference, when they get a telephone call, I take it to them. And I was only trying to keep Mr. Perry from killing one of them." The defendant specifically denied that he pointed his gun at Carl Weldon Haynes or anybody else. On cross-examination he admitted that he had been convicted in 1951 for a violation of the prohibitory laws.

It is contended that the trial court erred in giving instructions two and three for the reason that the court did not instruct the jury that it was necessary for the defendant to intentionally point a gun at the prosecuting witness before he could be convicted. The instructions in question followed the language of the statute which merely reads, "It shall be unlawful for any person to point any pistol or any other deadly weapon whether loaded or not, at any other person or persons either in anger or otherwise." 21 O.S.1951 § 1279.

In construing this statute, this court held that before a conviction could be sustained, the proof must show an intentional pointing of the weapon. Buchanan v. State, 25 Okl.Cr. 198, 219 P. 420. However, we find that in instruction number one, the court advised the jury that before they could return a verdict of guilty, they must find from the evidence beyond a reasonable doubt that defendant did "intentionally and wrongfully point a deadly weapon at one Carl Weldon Haynes."

The most serious proposition urged by counsel was his contention that the instructions did not fully and fairly cover the issues of the case, it being asserted in the brief of counsel that it was the defendant's contention that he was acting in self-defense; and that the court in none of the instructions submitted the law on self-defense nor further advised the jury that if they should find that defendant was acting in his own necessary self-defense, he should be acquitted. In the case of Dickinson v. State, 3 Okl.Cr. 151, 104 P. 923, this court discussed the law of self-defense as applied to a prosecution for the alleged unlawful pointing of a pistol at another, and we there held that where the evidence justified, the defendant was entitled to an instruction advising the jury that where the weapon is pointed in the lawful defense of his person, the law would excuse such action.

Defendant presented no requested instructions nor did he verbally request the court to enlarge upon any of the instructions which were given. Notwithstanding no request was made, we think the defendant would have been entitled to an instruction covering the law of self-defense so far as it was applicable to the offense charged against him if the proof of either the State or defendant sustained the application of such rule of law.

We have hereinabove quoted the testimony of the accused and we find that he specifically denied he pointed his gun at anybody. The witness, Perry, who testified for defendant, likewise denied that defendant pointed his gun at anybody. There is therefore no issue presented that defendant pointed a gun at Haynes but that he was justified in so doing because he was acting

in self-defense. None of the proof of the State sustained any theory of defendant acting in self-defense. The defense which was interposed was that defendant did not point his gun at Haynes but that he had his gun in his hand to use more as a warning to the Haynes group in order to prevent them from further advancing towards Perry in the belief that if they did so advance towards Perry, he would kill some of them. According to defendant's testimony, his intention was to befriend the Haynes to save their lives being taken by Perry. We think the instructions fairly presented the issues.

Under the statute, the minimum sentence which could be inflicted on defendant was a three months' imprisonment in the county jail and a fine of $50. For that reason we are unable to give the defendant any relief by modification of the sentence which was imposed. Finding no material error, the judgment and sentence of the County Court of McClain County is affirmed.

POWELL, P. J., and BRETT, J., concur.