**Cephus Donald DYER, Appellant,**

**v.**

**The STATE of Oklahoma, Appellee.**

**No. F–75–216.**

Court of Criminal Appeals of Oklahoma.

June 20, 1975.

Tom Bingman, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

Appellant, Cephus Donald Dyer, hereinafter referred to as defendant, was charged in the District Court, Okmulgee County, Case No. CRF–74–130, for the crime of Kidnapping, After Former Conviction of a Felony. Defendant was convicted of said crime and sentenced to serve fifty (50) years in the State penitentiary. From said judgment and sentence, the defendant files this timely appeal.

Billie Jean Gray, the State's first witness, testified that she was staying with her daughter at the Carriage Inn Motel on the 24th of August, 1974, in Okmulgee, Oklahoma. Shortly after 12:00 noon she and her daughter stopped to use a telephone at the Warehouse Market in Okmulgee in an attempt to locate the city's post office. After her daughter had returned from the telephone booth, and just as they were preparing to leave, a man pulled opened her car door and stuck a gun in her side. She stated she was forced to drive and identified the man who suggested that she drive as being the defendant. The witness related that she began to drive but became so upset that she was told to stop the car. The defendant began to drive while she was seated in the back seat next to a man with a gun. There were two men and herself in the back seat and her daughter at this time was in the front seat with another girl. The defendant drove north on the Beeline toward Tulsa. The witness asked many times during the escapade to be released but her pleas were ignored and the defendant finally told her daughter to tell her, Mrs. Gray, to shut up. The witness identified State's Exhibit No. 1 as being a handgun which looked like the one the man in the back seat had put in her side during the trip. While traveling at a fast rate of speed on the Beeline, they passed a highway patrolman who began following their car. She related that the defendant told the men in the back seat with her to keep down out of sight because it would look funny if there were too many people in the car. After the highway patrolman had followed them for a while, they came to a roadblock. Upon seeing the roadblock the defendant turned off the highway onto a dirt road and then onto a cross-over heading back toward Okmulgee.

The defendant, after an exchange of gunfire from the car she was in and a policeman, lost control of the car and went across a ditch into a dirt bank alongside the road. She ran to the highway patrolman after the car had stopped and told them that she and her daughter were hostages and not to shoot at the car. At this time the defendant and two other men and one woman were in the custody of the officers. The witness further testified that at no time had she willingly gone with the defendant or other escapees and that during the course of the trip she recalled a conversation between the defendant and the man with the gun, whom she later learned to be named Fite, that they had escaped from jail and that Fite had asked to drive and the defendant had refused to let him drive.

On cross-examination the witness reiterated her statement that the defendant had been driving the car and that she had asked him about two times to let herself and her daughter go, but he refused.

During the State's re-direct examination of the witness she testified that she was afraid of the defendant during the incident and at the present time.

The State next called Clyde Gardenhire who testified that he had been the Chief of Security at Oklahoma State Tech for the past eight years. The witness testified that he was at a service station west of the courthouse in Okmulgee on the 24th of August and that he noticed four people running down the street, two white men, a black man and a white girl. The four people were at the south end of the Warehouse Market when he saw a tall white man jerk the car door open and appeared to put a gun to the side of the head of the lady who was driving the car. Thinking it was a robbery, he went inside the service station to call the police and asked a Mr. Haddox to get the tag number of the car. He further testified that he could not personally identify any of the four persons, but that the car was a white over green 1970 or 1971 Pontiac.

The State's next witness was Charles Haddox who testified he was at the Conoco station with Mr. Gardenhire on the 24th of August, 1974, where he observed four people running down the street to the Warehouse Market. He testified that there were two white males, a black male, and a white girl and that one of the white males opened the car door and put what he thought was a gun to the lady driver's head. He observed the car's tag number and gave it to Mr. Gardenhire who relayed the tag number to the police. He further testified that he could not identify any of the people.

The State next called Larry Sallee, a trooper with the Highway Patrol. The trooper testified that at 12:47 p. m. he was advised of a jailbreak and set up a roadblock on U. S. 75, known as the Beeline. Approximately two minutes after arriving at the location he saw a car fitting the description and the tag number given pass him. He followed the vehicle north towards Tulsa and toward a roadblock which had been set up. He was able to identify the defendant as the driver of the car he was following. During the evasive action taken by the suspect's car, Trooper Sallee fired one shot at the left rear tire and after firing the shot another shot was fired from the car by the man named Fite. After the vehicle was wrecked he participated in the arrest of the four people in the car and noticed that of the two hostages, the older lady was in the back seat of the car and the younger lady was in the front seat. He further testified on redirect that the defendant, after the car had been stopped, ran from the vehicle up a slight hill and that, after being ordered to do so, the defendant came back down the hill to the arresting officers.

The State next called Roy Clugston, a deputy sheriff for Tulsa County. He participated in the roadblock and described the events leading up to the capture of the defendant. He further testified that he had transported the defendant and another defendant to the Tulsa County jail.

The State next called Bill O'Dell, a deputy sheriff for Tulsa County. He related that on August 24, 1974, he participated in the roadblock with Deputy Sheriff Clugston and testified to the events of the arrest of the defendant in the same detail as did Officer Clugston.

Linda Gray was called as the State's next witness, and testified that she was a 17-year-old senior at Okmulgee High School. The witness testified that on August 24, 1974, around 12:00 or 12:30 p. m., she and her mother stopped at a phone booth at the Warehouse Market and after she had returned to the car a white boy pulled open the car door on her mother's side and stuck a gun in her side and told her to move over. Her mother was told to drive by a man who had gotten in the back seat and she started to drive. She related that she was being held by the girl in the front seat while her mother was driving and that her mother became so nervous that she could not go fast enough and that then a Negro man, identified as the defendant, took over the driving. Miss Gray testified that on several occasions her mother asked to be released and that the suspects said that they could not release them until they reached Tulsa. During the ride she was told to keep her head down by both the defendant and the girl in the front seat because they felt it would look strange with so many people in the car. The witness stated that she did not go on the trip of her own volition; that during the trip and during her testimony she was afraid of the defendant. She testified to the events leading up to the arrest and that after the car had been stopped she looked up and saw the defendant on a hill as well as several policemen, and after seeing the policemen she and her mother got out of the car and ran up the road.

On cross-examination, the witness stated that at no time did she make an attempt to get out of the car because the girl was holding her. On re-direct the witness testified that Fite never made any menacing or threatening motions toward anyone in the car except the witness and her mother.

The State's next witness was Douglas Nichols, a trooper with the Highway Patrol. He identified State's Exhibit No. 1 as being the .38 caliber Smith and Wesson handgun he retrieved from the highway where it had been thrown by the suspects. On cross-examination he testified to a conversation he had with Mrs. Gray during which she related that she was in fear for her life while she was in the automobile. At the close of this witness' testimony, the State rested.

The only witness called by the defense was Ronald Calvin Fite. He testified that on August 24, 1974, he commandeered a car driven by Mrs. Gray and her daughter and that he subsequently plead guilty to a charge of kidnapping and received a punishment of twenty-five (25) years. He was arrested at the same time as the defendant and at the time he commandeered the car he was being held for first degree murder. He subsequently plead guilty to that charge and was sentenced to a term of ten (10) years to Life. He had plead guilty to a charge of breaking and entering some time in 1972. He testified that he pointed a gun during the incident only at Mrs. Gray and her daughter, and further testified that the kidnapping was his idea and his action and that he had control of the automobile.

On cross-examination the witness testified that in his escape from jail he obtained the keys to the cell doors after the defendant had jumped the jailer and that the defendant broke out of jail with the witness. He further testified that all the people who escaped, including the defendant, went willingly and that this testimony was the first time that the witness ever willingly tried to take all of the blame for the kidnapping. The witness further related that during the investigation of the witness' murder charge he had told quite a few different stories about what had happened in that case.

Subsequent to the witness, Ronald Calvin Fite's testimony, the defense rested.

■ The defendant's first proposition of error asserts that the verdict is not supported by the evidence and is contrary to the court's instructions. Specifically, the defendant objects to Instruction No. 4 which reads as follows:

"All persons concerned in the commission of a crime who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof. However, you are further instructed that mere standing by, although standing by with guilty knowledge, does not constitute a person as a principal.

"One who does not actively commit the offense, but who aids, promotes, or encourages its commission either by act or counsel or both, is not deemed by law to be guilty and shall not be found guilty of the crime unless he did what he did knowingly and with criminal intent. To abet another in the commission of a crime implies a consciousness of guilt in instigating, encouraging, promoting, or aiding the commission of such criminal offense."

The evidence reveals that the defendant willingly accompanied his co-escapees in commandeering Mrs. Gray's automobile. The defendant took over the driving from Mrs. Gray and continued to drive the car until apprehended. The defendant repeatedly ignored Mrs. Gray's pleas to release her and her daughter. When the car was followed by the Highway Patrol, the defendant instructed others to keep their heads down because it "might look funny if there were too many people in the car." (Tr. 29)

In Morrison v. State, Okl.Cr., 518 P.2d 1279 (1974) we held that:

"Participation in the commission of a crime may be established by circumstantial evidence. Dean v. State, Okl.Cr., 509 P.2d 1365; Love v. State, Okl.Cr., 449 P.2d 729. The trial court properly instructed the jury that to be concerned in or aid and abet in the commission of a crime as a principal, one must either commit the crime itself or procure it to be done, or aid or assist, abet, advise or encourage its commission. Mere presence or acquiescence, without participation, does not constitute a crime. . . ."

In the instant case, we find that there was sufficient evidence for the jury to find those elements of conscious collaboration, association or community of scheme in the defendant's actions and that, consequently, the defendant added, assisted, abetted, advised or encouraged the kidnapping of Mrs. Gray and her daughter. Further, Instruction No. 4 as given was a proper statement of the law. We find the defendant's first proposition of error without merit.

■ The defendant's second proposition of error asserts that the sentence of fifty (50) years is excessive and that the verdict and sentence are the result of passion and prejudice.

Regarding the punishment assessed by the jury, it cannot be said that it was excessive. The sentence assessed the defendant was within the limits prescribed by law. This Court cannot conscientiously say that under all the facts and circumstances the sentence is so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264 (1970).

It is therefore the opinion of this Court that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and BUSSEY, J., concur.