Kurk Kendall JOHNSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–179.

Court of Criminal Appeals of Oklahoma.

Aug. 26, 1976.

Certiorari Denied Nov. 8, 1976.
See 97 S.Ct. 364.

**52**

Leslie R. Earl, Public Defender, Pete Silva, Jr., Asst. Public Defender, Tulsa County, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge.

Appellant, Kurk Kendall Johnson, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Tulsa County, Case No. CRF–75–690, for the offense of Kidnapping for Extortion, in violation of 21 O.S.1971, § 745. The jury assessed punishment at sixty, (60) years in the custody of the Department of Corrections, for which on the 19th day of September, 1975, judgment and sentence was pronounced in accordance with the jury verdict. From said judgment and sentence the defendant has filed this timely appeal.

The State first called Celia Nading. She stated her father was Earl Bell and that he was the assistant manager for Picadilly Cafeteria in Tulsa, Oklahoma. She testified that her father had gone to work on the 30th of March, 1975, and had failed to return home at his usual hour. She and her mother became worried and began to look for him at approximately 11:00 p. m. on that date. They found his automobile parked near the Picadilly Cafeteria, but were unable to locate Mr. Bell. They reported same to the Tulsa Police. Upon returning back to the home, the witness testified that she began to receive telephone

calls from a person she identified as a "black male," demanding $20,000.00 for the safe return of her father. She stated that in cooperation with the Tulsa Police Department she went to three different locations within the City of Tulsa, Oklahoma, in attempt to make "drops" of the ransom money demanded. She further identified a voice on a tape recording which had been placed on her mother's phone with her mother's permission, as the voice of the person who had made the telephone calls to her demanding the money. She testified she never saw her father again alive.

The State next called Tulsa Police Officer Carroll Gatlin. Officer Gatlin testified that he had been assigned to the Bell case on March 31, 1975. He further testified that he went to the defendant's residence in the City of Tulsa with a traffic warrant and to pick him up as a suspect in the Bell kidnapping. He further testified that he had information via voice identification that the defendant was the person involved in the kidnapping. The officer then testified that along with two other police officers he proceeded to open the trunk of defendant's car after obtaining the keys from defendant's wife. The officer testified that the reason for opening the trunk was to look for Mr. Bell, and if he was in the trunk to rescue him and thus save his life since Mr. Bell was in his 60's and in ill health. Upon opening the trunk the officers discovered a .22 caliber rifle and pry marks on the inside of the trunk.

The next witness called on behalf of the State was a William Johnson. Mr. Johnson testified that he was a brother of the defendant. He identified the defendant. Mr. Johnson testified that on or about the 30th day of March, 1975, in the late evening hours or early morning hours of March 31, 1975, his brother, the defendant, showed him a man in the back of defendant's car. The witness identified the man as a white male. The witness further stated that defendant related to him that he was "going to hold the man and try to get some money." The witness also testified

that to his knowledge his brother owned a .22 caliber rifle which was partially wrapped with black tape.

The State next called Tulsa Police Officer Tom Lewellyn. Officer Lewellyn testified as to the chain of custody regarding the gun found in the trunk of the defendant's car. The witness also testified as to the chain of custody concerning two .22 caliber cartridges found near the scene where Mr. Bell was discovered. The witness also identified some leaden projectiles taken from the body of Mr. Bell.

The next witness for the State was Tulsa Police Officer Roy Goodenough. Officer Goodenough stated that some of the tape found around the neck of Mr. Bell's body was similar to the tape which was found as designs on defendant's automobile.

The next witness for the State was agent Robert Seibert of the Federal Bureau of Investigation. This witness was qualified as a ballistics expert and testified that the cartridges found near the body of Mr. Bell were fired by the .22 rifle which had been found in defendant's car, exclusive of all other weapons in the world. He further testified that the leaden projectiles recovered from the body of Mr. Bell were too mutilated for definite identification but were not inconsistent with projectiles fired from the defendant's weapon.

For his first assignment of error the defendant alleges that the trial court erred in failing to sustain defendant's motion to suppress items obtained during the illegal search of defendant's automobile, more particularly, the trunk compartment of said automobile. The defendant argues that this was a warrantless search without probable cause and that if there had been probable cause there was ample time for the officers to have obtained a search warrant. The defendant urges that in no way will a bench warrant for a minor traffic offense justify a search of the trunk of a defendant's automobile. With this last statement we wholeheartedly agree, how-

ever, this does not necessarily mean that the search itself was improper or unconstitutional. The Attorney General does not rely on a custodial arrest pursuant to a bench warrant to justify the opening of the trunk of defendant's automobile, but rather on the exigent circumstances then and there existing. "It is argued that the searching officers had time and opportunity to procure a search warrant prior to the search, and for this reason the search in question was illegal. It has been decided that this naked fact alone does not render the search of an autombile illegal." *Jenkins v. State*, 116 Tex.Cr. 374, 32 S.W.2d 848 (1930). See also, *United States v. Roberts*, D.C., 90 F.Supp. 718 (1950). Therefore, the relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable. One of the exceptions to the general search warrant rule is the situation where exigent circumstances or a state of exigency exists. "As a general rule the facts preceding a search must present sufficient facts to warrant an officer to reasonably infer contraband is within the vehicle. Further, there must be exigent circumstances which justify the officer to make the search without a warrant. The circumstances generating probable cause may, however, consist of a chain of ambiguous innocent activities which coupled together would lead a reasonable officer to believe contraband is within a vehicle." *Gonzales v. State*, Okl.Cr., 525 P. 2d 656 (1974). In the present case the officers had information that an elderly and ill man had been kidnapped and was being held in the trunk of an automobile. The officers had further information that the defendant's voice had been identified as the voice on the tapes demanding the ransom. Time was of the essence. Evidence shows that March 30th and 31st were cold and blustery days in the City of Tulsa, Oklahoma. At the time the officers reached the residence of the defendant, the kidnapping was at that time 24 hours old. An emergency situation was at hand. In *State v. Davidson*, 44 Wis.2d 177, 170 N. W.2d 755 (1969), the Supreme Court of Wisconsin recognized an inherent right of law enforcement officers to act promptly when the exigency of the situation calls for immediate investigation. "They had the responsibility, as well as the right, as law enforcement officers to enter the premises and were not required to seek and secure a search warrant before so doing." Upon arriving at the residence of the defendant, the officers had an opportunity to observe his demeanor and behavior and to realize that one of the "drop" locations was only a few hundred yards from the defendant's apartment. Armed with this information we find the officers had probable cause based on exigent circumstances to open the trunk of defendant's car and search same in hopes of saving a human life. The evidence shows that upon opening the trunk in the search for the victim of the kidnapping, the items seized were thus in plain view. "For the initial intrusion that brings the police within plain view of search and an article is found, not supported by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate." *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Furthermore, the Attorney General argues that even if the search in the above case was unconstitutional and therefore the items seized inadmissible there was ample evidence from which the court and jury could have found the defendant guilty of the above offense. While we have found no error in the above described search and seizure, we must also agree with the Attorney General's argument in this respect. The evidence of the victim's daughter and that of the defendant's brother standing alone would constitute a prima facie case. Recently, in *Duke v. State*, Okl.Cr., 548 P. 2d 230 (1976), this Court said:

". . . An examination of the entire record reveals that sufficient competent evidence was presented at trial to support a verdict of guilty. We are also of

the opinion that even if the evidence discovered during the contemporaneous search of the automobile should have been suppressed, there was still sufficient competent evidence presented at trial to support a finding of guilt beyond a reasonable doubt. We therefore find this assignment of error to be without merit."

Because of the two reasons stated above we find the defendant's first assignment of error to be without merit.

■ The defendant next complains that the trial court erred in failing to overrule defendant's motion in limine. The defendant sought by a motion in limine to require the court to limit the State's witnesses so as to exclude the reference to the death of the victim. A murder case at that time was pending against the defendant for said death. This motion was overruled. However, the trial court recognized the potential prejudicial effect of an improper evidence being brought in which would point to other crimes the defendant may have committed, and thereupon admonished the State to caution its witnesses to stay within the limits of propriety. More important still the court also granted defendant's requested instruction number 1, which reads as follows:

"[T]he Court instructs you that you must not consider any evidence of or concerning any other alledged offense that may have been committed by the defendant except insofar as it tends to prove that the defendant committed the offense charged . . ."

The District Attorney had argued at the pretrial motion hearing on the motion in limine that it was necessary to discuss the body of the victim in order that they might tie in the projectiles recovered from his body with the .22 caliber rifle found in the defendant's trunk. The court sustained the argument of the District Attorney, stating that this was a proper element in the identification of the defendant as being connected with the crime. In *Worchester*

*v. State,* Okl.Cr., 536 P.2d 995 (1975), this Court held that evidence of a beating administered by the defendant was admissible to establish identity of the defendant who committed a burglary. Such again was the holding in *Pruitt v. State,* Okl.Cr., 518 P. 2d 1114 (1974). We find no indication in the record that the State purposely violated the trial court's ruling to hold the evidence of murder solely for the purpose of identification of the defendant. In such a situation the trial court must weigh the probative value of the evidence with any prejudicial effect that it might have. See, *Harris v. State,* Okl.Cr., 450 P.2d 857 (1969). In light of all the precautions taken by the court, to wit: the admonishment to the state; the subsequent instruction; and, the probative value of the evidence which tended to connect the defendant with the crime, we find that the evidence was properly admitted.

■ For his final assignment of error the defendant urges that the sentence imposed by the trial court is excessive. The defendant specifically urges that the excessive sentence was caused by the evidence of other crimes admitted into trial and by other prejudicial remarks and evidence against the defendant at said trial. We find this argument without merit. Title 21 O.S.1971, § 745, sets the punishment for the crime of kidnapping for the purpose of extortion at not less than ten years. In *Flowers v. State,* 95 Okl.Cr. 27, 238 P.2d 841 (1951), this Court looked at the maximum sentence the convicted kidnapper could have gotten and ruled that his actual sentence of a set number of years was not excessive. In *Dyer v. State,* Okl.Cr., 536 P.2d 1317 (1975), this Court was confronted with a fifty year sentence for kidnapping. In that case we held:

"Regarding the punishment assessed by the jury, it cannot be said that it was excessive. The sentence assessed the defendant was within the limits prescribed by law. This Court cannot conscientiously say that under all the facts and circumstances the sentence is so exces-

sive as to shock the conscience of the Court. . . . " (Citation omitted)

Considering all the facts and circumstances in this case we hold that this sentence is not so excessive as to require modification.

Having found no error which would justify the reversal or modification of the sentence imposed, we hold that the judgment herein rendered should be and, hereby is, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.