Edward Leon **WILLIAMS**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–12467.

Criminal Court of Appeals of Oklahoma.

Dec. 4, 1957.

Rehearing Denied Feb. 5, 1958.

Second Petition for Rehearing Denied Feb. 26, 1958.

John A. Ladner, Jr., Fred W. Woodson, Jr., Tulsa, Paul Gotcher, Muskogee, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Edward Leon Williams, defendant below, was charged by information in the District Court of Tulsa County, Oklahoma, with the admitted crime of kidnapping, committed on December 17, 1956, against one Tommy Robert Cooke in the aforesaid county and state, in violation of 21 O.S.1951 § 745. Defendant first entered a plea of not guilty, but several days subsequent thereto withdrew the same and entered a plea of guilty before Honorable Leslie W. Webb, Judge of the District Court. On the plea of guilty, the defendant was sentenced to death in the electric chair. Judgment and sentence were entered accordingly, from which this appeal has been perfected.

On this appeal, the defendant seeks relief from said penalty of death upon two propositions hereinafter set forth. First, he contends the trial court erred in permitting the county attorney to make a statement in substance detailing the defendant's crime of kidnapping, another offense immediately preceding the kidnapping (supplying the motive therefor), and other crimes following the kidnapping. The facts, briefly, in regard to the crime herein alleged are that the victim, Tommy Robert Cooke, a theological student, stopped his car at about 5:30 p. m., Sunday, June 17, 1956, at the stop light at the intersection of Third and Cheyenne Streets in Tulsa, Oklahoma. The defendant, who was standing nearby, approached and at pistol point forced his way into the Cooke automobile, directing Cooke to drive south on Highway 64. Thus, the crime of kidnapping was completed by these acts. Norris v. State, 68 Okl.Cr. 172, 96 P.2d 540. Thence, he compelled Cooke to drive to Bixby, Oklahoma, where under the persuasion of his pistol, the defendant took from Cooke's billfold $5, with which he paid for gas, and forced Cooke to continue on South on Highway 64. At a point approximately three miles east and four miles north of Taft, Oklahoma, in Muskogee County, a point with which he was apparently familiar, the defendant marched Cooke into the weeds off a dead-end road, with Cooke pleading not to be tied up, according to Williams' confession, and shot Cooke on the right side of the head behind the right ear, affecting his instantaneous death. The life of Cooke was apparently taken with the cold blooded intent of eliminating the possibility of positive identification. This might have resulted had it not been for his subsequent depredations. The accused then stole the decedent's automobile and sought to effect an escape from his crime.

It appears the night preceding the kidnapping, about 1:00 a. m., the defendant drove into a Hudson Service Station, bought gas, asked how much he owed the attendant, reached into the automobile he was driving, got a .38 caliber pistol, told the attendant he wanted his money, thus obtained $30 in currency, forced him inside the station for more money, and required him to go into the rest room with the admonition, "You come out and I'll blow your head off." Later, in flight from pursuing policemen, he wrecked his automobile, but avoided apprehension by crawling through two-hundred feet of culvert, hiding in a wooded area until the evening of the kid-

napping when he came out and consummated the abduction of Cooke.

It is apparent the motive behind the kidnapping was to avoid apprehension by the officers for the robbery with firearms committed the night before. After kidnapping and killing Cooke, and stealing Cooke's automobile, the defendant drove to Talihina, Oklahoma, where he committed an armed robbery of his former employer of $1,000. Later, he abandoned the Cooke automobile and returned to Talihina where he burglarized a grocery store for food with which to sustain himself in the mountains. Thereafter he was arrested on a bus by a member of the Highway Patrol at Poteau, Oklahoma, and a short time later confessed the murder of Tommy Cooke, taking the officers to the point in Le Flore County, Oklahoma, where he had disposed of the gun, which the officers recovered and which ballistics experts established was the gun that killed Cooke. All the foregoing occurrences the County Attorney detailed in his statement relative to the motive for the kidnapping. In addition thereto, his F. B. I. record detailing prior convictions for automobile theft, robbery with firearms, and other crimes was submitted to the trial court. It is thus apparent that this unfortunate defendant, though only twenty seven years of age, had long been a devotee to crime.

The court proceeded with great care and caution in this case relative to the defendant's constitutional and statutory rights, even delaying the pronouncement of judgment and sentence for forty eight hours after the defendant's plea of guilty, even though the defendant had waived his right thereto and stood ready for the pronouncement of judgment and sentence. Notwithstanding these facts, the defendant complains the trial court erred in allowing the County Attorney to orally state these foregoing facts by way of aggravation. The defendant contends that this procedure was in violation of the provisions of 22 O.S. 1951 §§ 973–975 inclusive, reading as follows:

"§ 973. After a plea or verdict of guilty in a case where the extent of the punishment is left with the court, the court, upon the suggestion of either party that there are circumstances which may be properly taken into view, either in aggravation or mitigation of the punishment, may in its discretion hear the same summarily at a specified time and upon such notice to the adverse party as it may direct.

"§ 974. The circumstances must be presented by the testimony of witnesses examined in open court, except that when a witness is so sick or infirm as to be unable to attend, his deposition may be taken by a magistrate of the county out of court, at a specified time and place, upon such notice to the adverse party as the court may direct.

"§ 975. No affidavit or testimony, or representation of any kind, verbal or written, can be offered to or received by the court or member thereof in aggravation or mitigation of the punishment except as provided in the last two sections."

In this connection, it has been held that on a plea of guilty in a capital case, it is for the trial court to determine whether the defendant should be punished by life imprisonment or by imposition of the death penalty. In re Watkins, 21 Okl.Cr. 95, 205 P. 191; In re Opinion of the Judges, 18 Okl.Cr. 598, 197 P. 546; In re Opinion of the Judges, 6 Okl.Cr. 18, 115 P. 1028. Nevertheless, on a plea of guilty, the provisions of the foregoing statute may be invoked when request is made for the taking of evidence on the question of aggravation or mitigation of punishment. This request may be made by the state or the defendant.

■ It has been held not to be improper to employ this method of procedure in the absence of a request therefor. In re Watkins, supra; State v. Arnold, 39 Idaho 589, 229 P. 748. But, two things are clear under the provisions of § 973. First, pursuing this method of procedure is a matter of the

trial court's sound discretion. Second, its use is further contingent upon the request of either the state or the defendant.

We have never been called upon to directly pass upon this question. Under the Criminal Code of Illinois, S.H.A. ch. 38, § 732, it is provided:

> "In all cases where the court possesses any discretion as to the extent of the punishment, it shall be the duty of the court to examine witnesses as to the aggravation or mitigation of the offense."

The wording of this statute would appear to be more mandatory than that of the Oklahoma statute in question. Even so, in Illinois it has been held that the foregoing provisions of said statute are waived by the failure of the parties to the action to invoke its use by request. People v. Crooks, 326 Ill. 266, 157 N.E. 218; People v. Throop, 359 Ill. 354, 194 N.E. 553; People v. Clark, 387 Ill. 468, 56 N.E.2d 785; People v. Evans, 379 Ill. 430, 74 N.E.2d 708; People v. Thompson, 398 Ill. 114, 75 N.E.2d 345, certiorari denied 332 U.S. 856, 68 S.Ct. 384, 92 L.Ed. 425, and 337 U.S. 943, 69 S.Ct. 1497, 93 L.Ed. 1747; People v. Carter, 398 Ill. 336, 75 N.E.2d 861, certiorari denied 333 U.S. 882, 68 S.Ct. 908, 92 L.Ed. 1157.

■ It is contended that under the provisions of § 975 it is the mandatory duty of the court to hear witnesses. But, in construing §§ 974 and 975 in light of the provisions of § 973, we are of the opinion that both the provisions of § 974 and § 975 are contingent upon the request for evidence under the provisions of § 973, or it is within the trial court's discretion to pursue some other reasonable method. When the parties fail to make a request for the privilege thereof, the same is waived and some other method of supplying the court with the necessary information for the pronouncement of judgment and sentence may be substituted instead. 24 C.J.S. Criminal Law § 1983, note 33, p. 1206; People v. Pennington, 267 Ill. 45, 107 N.E. 871, 872; People v. Withey, 387 Ill. 418, 56 N.E.2d

784, certiorari denied 323 U.S. 800, 65 S.Ct. 552, 89 L.Ed. 638; People v. Stack, 391 Ill. 15, 62 N.E.2d 807, certiorari denied 326 U.S. 792, 66 S.Ct. 477, 90 L.Ed. 481; People v. Farris, 392 Ill. 267, 64 N.E.2d 456, certiorari denied 327 U.S. 811, 66 S.Ct. 973, 90 L.Ed. 1036; People v. Curth, 398 Ill. 322, 75 N.E.2d 755; People v. Fleming, 406 Ill. 389, 94 N.E.2d 358; People v. Hall, 407 Ill. 137, 94 N.E.2d 873, certiorari denied 340 U.S. 937, 71 S.Ct. 483, 95 L.Ed. 676; People v. Rogers, 174 Misc. 31, 18 N.Y.S.2d 844; People v. Van Orden, 174 Misc. 65, 19 N.Y.S.2d 938.

■ In regard to § 973, in Herren v. State, 74 Okl.Cr. 432, 127 P.2d 384, this court said:

> "Under such statute the extent of the inquiry, when the accused comes on for pronouncement of sentence, is a matter addressed to the sound discretion of the trial court."

In this record, at no time did the defendant attempt to invoke the provisions of this statute. He did not at any time request the taking of evidence in mitigation or offer the slightest statement by way of mitigation. He only asked for mercy, something he did not show his victim. We are therefore of the opinion that the defendant's first contention under both the law and the facts cannot be sustained. Therefore, the trial court neither erred nor abused his discretion in receiving the County Attorney's oral statement before pronouncing judgment and sentence. Particularly is this true when the defendant, after the statement had been read into the record, upon the trial court's interrogation, admitted:

> "The Court: Now, at that time on Wednesday, there was a statement of facts made by the State, relative to this case and the sequence of events and the facts surrounding the sequence of events and the facts surrounding the commission of this crime. Do you have any correction to make in reference to the statement of counsel for the State, in that regard?

"Mr. Williams: No, sir.

"The Court: And you at this time admit that they were true and that you committed the acts as set forth by the State, that is correct, is it?

"Mr. Williams: Yes, sir.

"The Court: All right. Do you have anything further to say on behalf of this·defendant?

"Mr. Woodson: Nothing further.

It is apparent that the defendant not only waived the provisions of 21 O.S.1951 §§ 973, 974, 975, but he at no time intended to invoke said provisions for mitigation, since apparently he had no such evidence to offer. In the absence of a showing in mitigation in a capital case, the extreme penalty may be imposed. People v. Laing, 2 Cal.2d 417, 41 P.2d 165.

 Finally, it is urged, "The extent of the punishment is excessive and disproportionate to the crime of kidnapping, and the death penalty was actually punishment for the murder committed in Muskogee County, Oklahoma, as part of the same transaction for which the defendant had been previously convicted and sentenced." It is further urged the crime of kidnapping merged into the crime of murder. Neither of these contentions can be sustained, for the law defines murder and kidnapping as two separate and distinct offenses. Therefore, there would not be such thing as merger of these separate offenses. Furthermore, Oklahoma does not recognize such doctrine. Burns v. State, 72 Okl.Cr. 432, 117 P.2d 155; McCreary v. Venable, 86 Okl.Cr. 169, 190 P.2d 467; State v. Stout, 90 Okl.Cr. 35, 210 P.2d 199. It is further urged these crimes arise out of the same transaction; but such fact will not result in a merger of these separate and distinct offenses. State v. Moore, 326 Mo. 1199, 33 S.W.2d 905. Although certain consequences may follow from certain prohibited acts, but are not necessarily the result of such prohibited acts, each of said acts may be prosecuted and punished as separate and distinct offenses, when so defined by statute. In such case, the punishment imposed would not constitute double punishment. State v. Empey, 65 Utah 609, 239 P. 25, 44 A.L.R. 558. In 24 C.J.S. Criminal Law § 1990, note 10, p. 1213, the rule is stated:

"Where there are several offenses, although each is part of the same transaction, * * * the imposition of separate punishments on conviction of each offense is not double punishment, * * *."

Pagliaro v. Cox, 8 Cir., 143 F.2d 900; Tesciona v. Hunter, 10 Cir., 151 F.2d 589; Carroll v. Sanford, 5 Cir., 167 F.2d 878; Murray v. United States, 9 Cir., 217 F.2d 583; Commonwealth ex rel. Withers v. Ashe, 350 Pa. 493, 39 A.2d 610. Hence, the punishment herein imposed for kidnapping is not objectionable on the ground that it constitutes double punishment. The statutes of Oklahoma provide the death penalty for three crimes other than murder, 21 O.S. 1951 § 701. These three crimes are robbery with firearms, 21 O.S.1951 § 801; rape in the first degree, 21 O.S.1951 §§ 1114, 1115; and kidnapping, 21 O.S.1951 § 745, all of which constitute separate and distinct crimes. The legislature, in fixing the penalties for these crimes, apparently regarded them of heinous character because they always present a potentiality of death for the victim. The maximum penalty fixed by the legislature for these crimes indicates a legislative belief that they were regarded as of equal gravity. From the County Attorney's statement to the court, it appears that in addition to the crimes of kidnapping and murder, within the space of three days Williams committed the crime of robbery with firearms three times.

In none of these crimes, as revealed by a search of capital cases, is the possibility of death to the victim so certain as in the crime of kidnapping. For example, death resulted to each of the following victims of kidnapping: Charles A. Lindberg, Jr., 1932; Charles Fletcher Mattson, 1936; Charles Sherman Ross, 1937; Peter David Levine, 1938; James Bailey Cash, Jr., 1938; Robert C. Greenlease, Jr., 1953; and Wilma Frances Allen, 1955; and others.

The reason for killing the victim is obvious. It is to destroy the means of the kidnapper's positive identification. Hence, it was reasonable for the trial judge, in measuring the defendant's intent at the time of the kidnapping in the case at bar, to consider that the defendant, Williams, not only intended to deprive Tommy Cooke of his liberty and property, but to take his life as the means of destroying the defendant's identification. Moreover, it was for the trial court to consider that thereafter it was the defendant's intent to steal Cooke's automobile as a means of avoiding apprehension for the violations he had already committed, and also to use it as an instrument of escape for those crimes he intended to commit in his one man crime wave. Yet, it is urged there is nothing particularly vicious in the single act of kidnapping.

We might agree that contention possesses merit when the kidnapping is viewed as an isolated crime. But, the courts are not required to insulate themselves to facts clearly manifesting intent, and the ultimate consequences of criminal acts. Neither cold law, righteous justice, nor plain logic requires such an approach to the problem of imposing punishment in any case. To the contrary, justice requires a consideration of all the factors leading up to, at the time of the commission of the act, and even acts occurring subsequent thereto, in determining intent in many cases. When so measured, the instant act of kidnapping presents a most heinous picture. Tommy Cooke was marked for death immediately upon Williams' asserting dominion over him. The defendant's dastardly intent was confirmed when he lost little time in compelling his victim to drive to an isolated, dead-end road where, in a cold and calculating manner, he immediately executed him. These are all matters within the trial court's discretion and consideration in determining the penalty to be imposed.

In People v. Popescue, 345 Ill. 142, 177 N.E. 739, 744, 77 A.L.R. 1199 at pages 1206–1207, it is said:

"It is as much for the protection of the accused as it is for the people that, after the question of guilt has been admitted by a plea or reached by verdict, the judge should know something of the life, family, occupation, and record of the person about to be sentenced. One of the most natural and common inquiries is whether the guilty person has ever been previously convicted of the same or similar offense. Courts are usually more lenient in pronouncing sentence upon first offenders. If the judge in making this inquiry has learned of some previous crime which the defendant admits he has committed, can it for that reason be said that the sentence imposed upon the guilty person was due to prejudice and should be set aside? Surely a provision of the law which often results in mercy and leniency toward a first offender cannot be the cause of error in every case where the trial judge, in making this inquiry, finds that the defendant has committed other crimes of similar character. Such a construction would mean that hardened criminals and so-called 'repeaters' could hide behind their crime records, and that a judge, before pronouncing sentence upon them, would be powerless to inquire into their past records.

"In many decisions of other jurisdictions it has been held that, where the court has discretion in fixing the punishment, it may consider the moral character of the accused, and such other evidence as it may deem necessary, as a guide in determining the punishment to be imposed (16 Corpus Juris, § 3065, p. 1297; State v. Wilson, 121 N.C. 650, 28 S.E. 416; State v. Wise, 32 Or. 280, 50 P. 800, 801; State v. Burton, 27 Wash. 528, 67 P. 1097, 1099; State v. Reeder, 79 S.C. 139, 60 S.E. 434, 14 Ann.Cas. 968) and in considering evidence in aggravation or mitigation of the offense the court may consider many matters 'not admissible

on the issue of guilt or innocence' (Toomer v. State, 112 Md. 285, 76 A. 118)."

To the same effect is Powell v. State, 94 Okl.Cr. 1, 229 P.2d 230, where it is said:

"Where the court has a discretion as to the character or the amount of punishment, it may be guided in the exercise of such discretion by accused's past record, by the motives actuating the crime, or by the fact that accused previously has been convicted of a similar or other offenses."

In the body of the opinion citing 24 C.J.S. Criminal Law § 1980, p. 1195, it is further said:

"Justice generally requires consideration of more than the particular acts by which the crime was committed, and that there be taken into account the circumstances of the offense together with the character and propensities of the offender."

We can reconcile the logic of this contention only by entering the isolation booth of sheer ignorance as to all the facts of this case and by approaching the situation with an attitude which neither law nor justice require. The legislature placed no limitations in the statute, 21 O.S.1951 § 745, the pertinent part of which reads as follows:

"A. Every person who, without lawful authority, forcibly seizes and confines another, or inveigles or kidnaps another, for the purpose of extorting any money, property or thing of value or advantage from the person so seized, confined, inveigled or kidnaped, or from any other person, * * * shall be guilty of a felony, and upon conviction shall suffer death or imprisonment in the penitentiary, not less than ten years."

To follow the defendant's contention would compel us to read into the statute elements which the legislature did not include. In truth, the legislature left the matter of imposition of the penalty in a case of kidnapping, where the plea is guilty, to the trial court and his sound discretion to be measured by the motive, the act, and its consequences. The reason for the lack of limiting provisions in the act are apparent. It was passed shortly after the Lindberg Law, 18 U.S.C.A. § 1201, in 1935. It was intended as a strong deterrent against such criminality. But, unlike the Federal act, it did not impose such requirements as bodily injury or death as a condition for the imposition of the death penalty. Clearly, the legislature did not intend that the courts of the State of Oklahoma should temporize with kidnappers. Neither did it intend that court should temporize with habitual criminals. The statutes provide for enhanced punishment for prior offenders. It is a fact that many of our most heinous crimes are committed by repeaters.

It is our sworn duty to uphold the law as written by the legislature. It is also our sworn duty to sustain the trial courts in the absence of error or abuse of discretion, neither of which we find in this record. We are concerned, herein only with matters of law. Mercy, which this defendant did not extend to his victim, is within the power of the Pardon and Parole Board and the Governor. Art. 6, Sec. 10, Okla. Const.

This is not the first capital case in which the death penalty has been imposed on a plea of guilty. Ellis v. State, 54 Okl.Cr. 295, 19 P.2d 972, robbery with firearms; Martin v. State, 54 Okl.Cr. 336, 20 P.2d 196, murder; In re Opinion of Judges, 54 Okl.Cr. 200, 16 P.2d 891, murder; Oliver v. State, 55 Okl.Cr. 7, 23 P.2d 718, murder; and other cases.

We are therefore of the opinion that the penalty herein imposed, when considered under all the circumstances, is not disproportionate, and we are further of the opinion had the trial court not considered the murder of the victim as an indication of the intent of the kidnapper, he would have been derelict in his duty and recreant to society. The judgment and sentence is affirmed.

The original time for execution of judgment and sentence, herein, having expired

**998**

due to the pendency of this appeal, it is considered, ordered, and adjudged that the judgment and sentence of the District Court of Tulsa County, Oklahoma, be carried out by the electrocution of this defendant on January 6, 1958.

POWELL, J., concurs.

NIX, J., dissents.

NIX, Judge (dissenting).

The Bill of Rights of our country provides in certain and concise language that no person shall be subject for the same offense to be twice put in jeopardy of life or limb. This sacred provision of our Constitution has been religiously adhered to since its ratification and adoption. One grain of dust chipped from this stalwart stone in our structure of laws would retard the progress of our jurisprudence beyond conception. In preserving these fundamental rights of our country, we must never permit that to be done indirectly which cannot be done directly.

Was the defendant sentenced to death in this case for the crime of murder, to which he had previously been convicted and sentenced to life, or was he sentenced to death for the crime of kidnapping? If the latter is true, the verdict should not be disturbed. If the former is true, the verdict should never stand. The hours of deliberation devoted to this question have been of a strenuous and trying nature. The paramount struggle has not been whether the defendant by creation of a sordid record has forfeited his right to live. That which has deeply concerned your writer is whether we have toyed with the Bill of Rights so precious to all mankind. Have we, by permitting an individual to be thrice carved in order to obtain a desired result, flaunted the Constitution of our land? There is grave doubt in my mind. The defendant in this case was charged with three separate and distinct crimes, arising out of the same transaction—kidnapping, armed robbery, and murder. He accosted the deceased at an intersection in the city of Tul-

sa, got in the deceased's car and by aid of a pistol forced his victim to drive into Muskogee County. This consummated the act of kidnapping. During the course of travel, he took from the deceased $5 with which to buy gas. Thus the crime of armed robbery. The transaction ended with the defendant killing his prisoner, consummating the crime of murder. The defendant was apprehended and charged with murder. The case was set for trial and while the jury was in the process of being selected, the defendant withdrew his plea of not guilty. Upon a plea of guilty, the Honorable E. G. Carroll, a District Judge, with long experience and learned in the law, sentenced the defendant to serve the rest of his natural life in the state penitentiary at McAlester. No doubt Judge Carroll took into consideration the hazards of a trial, relying for conviction almost exclusively upon a confession of the defendant, which would have been admissible only if voluntarily given. This no doubt gave the trial court much concern as was indicated in his remarks while passing sentence. He said:

"* * * This matter weighs heavily upon the shoulders of this Court. I want to do the right thing. I may be criticized for what I'm about to do, but it developed here today that to continue with a jury trial—I mean that it would be a long, if orderly process; and I recall only recently that in a motion filed by you to suppress certain evidence that certain things, certain evidence has come to the attention of the Court which might have some mitigating circumstances in the penalty.

"There was a confession alleged. There's some testimony on the part of the defendant that to obtain that confession that you were probably slapped and beaten and probably kicked to bring you to the submission—into submission and to sign this certain confession. During that motion I recall that there were some two confessions. One was never brought into court. It was destroyed, and what was in that

confession this Court will never know, but the other confession was brought into court, and I read it, and I remember that you stated that it was obtained after you were bodily beaten."

No doubt these statements were true as they were not challenged by the state. If they were true, the confession would not have been admissible and the state would have been tremendously handicapped in obtaining a conviction as the defendant was the sole surviving witness to the crime. However, this court is not herein charged to review the merits of this matter. The defendant had pleaded guilty to the crime of murder and received his punishment of life in the state penitentiary. Had the defendant received death, no doubt the present case would not be before this court and the crimes incident to the murder would have passed into oblivion and long since forgotten. Evidently other persons were not satisfied with this result and they chose to carve again. The defendant was brought back to Tulsa County where he was charged with armed robbery for which he was sentenced to 50 years in prison upon a plea of guilty; charged with kidnapping, pled guilty and received death in the electric chair; the desired results being obtained upon the third attempt.

A careful study of the proceedings in their entirety inevitably raises the question was defendant given the death penalty because he forced the deceased to drive into another county at pistol point or was the death sentence imposed because he committed the heinous crime of murder to which he had already been convicted and sentenced to serve the balance of his life in prison. The trial judge, in passing sentence upon the defendant for the crime of kidnapping, strongly indicated in his remarks that the crime of murder was deeply embedded in his mind and no doubt used to justify the extreme penalty. He said:

"* * * The court has been very deliberate in the matter of this case, has given it hours of consideration, and investigation; investigation of your record, investigation of the facts which have been alleged, which have been stated, and which you admit were part of this crime which you have committed in Tulsa County, *which* resulted in the murder of the victim, Reverend Cook, to which you have pled guilty and been sentenced in Muskogee County, and which the court takes into consideration, *that murder as being a part and parcel of the crime which is here, as a continuing thing. It is the Court's opinion that there has never been in the history of Tulsa County, a more brutal, vicious crime committed, this crime to which you have pled guilty here.* The fact that you have pled guilty to the crime of murder in Muskogee County and received a life sentence there, is not a particularly or material consequence in the matter of the Court passing sentence in this case."

It is made exceedingly clear by the temper of these remarks that the crime of murder was the predominating basis for the infliction of the death penalty. In alluding to the atrociousness of the crime, surely the trial judge had reference to murder and not kidnapping. The trial court, according to his remarks, gave hours of deliberation and investigation of the record showing facts resulting in *murder*, which was a part of the crime before the court. The court stated:

"* * * there has never been in the history of Tulsa County a more brutal, vicious crime committed, *this crime to which you have pled guilty here.*" (Emphasis ours.)

It is quite obvious that the trial judge did not have reference to the kidnapping, which in itself was not brutal or vicious, but to the murder committed in Muskogee County, with which we agree, as being brutal in its conception and vicious in its execution. I am inclined to agree with defendant's counsel in their contention that the extent of punishment in the case at

bar was received only as a result of the murder committed in Muskogee County and that murder constituted the prevailing factor in the minds of the county attorney and trial court.

If the deceased had been taken to Muskogee by the defendant and released without harm, we can agree that the death penalty would have been excessive. The majority opinion in justifying the death penalty calls attention to the potential gravity of the crime of kidnapping by referring to such cases as Lindbergh, Greenlease, Ross, and others generally known to the average citizen. In each of these cases the victim was killed for which the defendant was given the extreme penalty. It is well to point out that these defendants were tried but one time, convicted one time and sentenced one time, though their crime was identical in nature with the case at bar. This is the first death case before this court as a result of kidnapping. Since statehood six cases have been decided by our court where defendants were charged with kidnapping. These cases are cited as follows along with the sentence imposed upon each defendant: Norris v. State, 68 Okl.Cr. 172, 6 P.2d 540, 30 years; Shimley v. State, 87 Okl.Cr. 179, 196 P.2d 526, 3 years; Flowers v. State, 95 Okl.Cr. 27, 238 P.2d 841, 20 years; Williams v. State, 96 Okl. Cr. 362, 255 P.2d 532, 20 years; Phillips v. State, Okl.Cr. 267 P.2d 167, 20 years; and Ratcliff v. State, Okl.Cr. 289 P.2d 152, 5 years.

In most of these cases a gun was used, violence and brutality was shown. The greatest sentence imposed was 30 years, Norris v. State, supra. The average was 16 years. In the majority of these cases numerous charges could have been filed as a result of the same transaction, but each defendant was tried one time, convicted one time and sentenced one time. We must, therefore, conclude that the death penalty herein imposed constitutes punishment a second time for murder. This being true, it is a flagrant violation of the fundamental concepts of our law that no person shall be twice put in jeopardy nor given double punishment for the same offense.

Our court has formerly held in the case of Rupert v. State, 9 Okl.Cr. 226, 131 P. 713, 714, 744, 45 L.R.A.,N.S., 60, in an opinion of the able jurist, Judge Doyle:

"That no person shall be twice put in jeopardy for the same offense is a universally accepted principle of the common law, and this principle has been embodied in the federal Constitution and in all state Constitutions, and it is incorporated in the Constitution of the state of Oklahoma by express provision * * *."

"We think this provision of the Bill of Rights, and the principles therein declared, is broad enough to mean that no person can be twice lawfully punished for the same offense. The one follows from the other, and this constitutional provision is designed and intended to protect the accused from a double punishment as much as to protect him from two trials."

In the case: Ex parte Lange, 18 Wall. 163, 85 U.S. 163, 21 L.Ed. 872, uses this language in supporting this proposition:

"If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offense. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offense, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offense. * * *"

" * * * we shall see ample reason for holding that the principle intended to be asserted by the constitutional provision must be applied to all cases where a second punishment

is attempted to be inflicted for the same offense by a judicial sentence.

"For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? What is it that, having once been tried and found guilty, he can never be tried again for that offense? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment executed on the criminal he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? It is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted? The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it. * * *"

"There is no more sacred duty of a court than, in a case properly before it, to maintain unimpaired those securities for the personal rights of the individual which have received for ages the sanction of the jurist and the statesman; and in such cases no narrow or illiberal construction should be given to the words of the fundamental law which they are embodied. * *"

It can be ascertained by research that all jurisdictions have been most zealous in adhering to the Bill of Rights in the preservation of prohibitions against double jeopardy directly or indirectly. Our court has on numerous occasions clung stead-fastly to the doctrine. It was said in Love v. State, 41 Okl.Cr. 291, 272 P. 1035, 1037:

"The decisions of this court have uniformly held that as used in the constitutional provision above quoted providing that no person shall be twice put in jeopardy for the same offense, * * * so nomine, but the same criminal act, transaction, or omission. Also, that where the state elects through its authorized officers to prosecute an accused for an offense in one of its phases or aspects and upon his trial the accused is convicted or acquitted by a jury, the state cannot afterwards prosecute the same criminal act or transaction under color of another name. Estep v. State, 11 Okl. Cr. 103, 143 P. 64; Jackson v. State, 11 Okl.Cr. 523, 148 P. 1058; Barton v. State, 26 Okl.Cr. 150, 222 P. 1019; Hourigan v. State [38 Okl.Cr. 11], 258 P. 1057; Courtney v. State [41 Okl.Cr. 30], 269 P. 1059; Fox v. State, 50 Ark. 528, 8 S.W. 836; In re Nielson, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118."

The Supreme Court of Kansas discussed this matter at great length in the case of State v. Colgate, 31 Kan. 511, 3 P. 346, 348, 352. The following language was used therein:

"Of course, the prosecutor may associate the criminal act with all its consequences, and then carve therefrom the highest crime that can be carved from such act and its consequences, and then prosecute the wrongdoer for such crime. If he chooses, however, he may carve out a smaller degree of crime, and prosecute for that only. But he should be allowed to carve but once. * * * But we do not think that the prosecutor should be allowed to multiply prosecutions indefinitely, by dividing up the consequences of a single wrongful act, and founding a separate prosecution upon each of such consequences."

The utterances of these various jurisdictions are based upon our constitutional barrier against double jeopardy. It had its inception centuries ago. The ground work was laid in the Magna Charta 742 years ago. It became a stone pillar in our system of jurisprudence upon ratification of the Bill of Rights in 1791. Our courts since that time have devotedly preserved its strength. It has been heroism to die in defending its sacred value. If it were relaxed to take the life of one individual, contrary to its concepts, the damage would be done to mankind, not to the victim. The defendant in this case has created for himself a sordid record that could neither merit nor expect mercy from this court, and his destiny will not be affected by the remarks of your writer.

The majority opinion has affirmed the conviction and the execution date is set. This opinion has not been expressed out of any compunction for the defendant, but out of my concern for the inherent rights of all people as laid down in the constitution of our land.

### On Rehearing.

BRETT, Presiding Judge.

After oral argument, it is felt that the matters urged on petition for rehearing have been fully treated in the majority opinion of this court, and the same is adhered to, and the matters urged in the petition for rehearing are overruled and petition denied.

The time originally appointed for the execution of the defendant, Edward Leon Williams, having passed pending this appeal;

It is ordered, adjudged and decreed that the judgment and sentence of the district court of Tulsa County, Oklahoma, be carried out by the electrocution of the defendant, Edward Leon Williams, by the Warden of the Oklahoma State Penitentiary, McAlester, Oklahoma, on Tuesday, the 11th day of March, 1958.

POWELL, J., concurs.

NIX, J., dissents.

POWELL, Judge (concurring).

The petition for re-consideration of the opinion promulgated herein on December 4, 1957 and for rehearing and filed in this court on December 18, 1957 was so forceful and the oral argument by John A. Ladner, Jr., Esq. (who did not represent defendant in the trial court), so arresting, that we have reconsidered the opinion complained of. The record has been read and re-read, and all briefs re-read and the authorities studied. I have particularly restudied the opinion in light of the petition for re-hearing.

It should be made clear that when the district court of Tulsa County convened on January 30, 1957 there were two charges pending against the defendant, case No. 16910, being a charge of robbery with firearms, and where the maximum penalty was death (21 O.S.1951 § 801); and case No. 16911, kidnapping, where likewise the maximum penalty was death.

The record discloses that a sentence of fifty years was imposed in the first case, and in the second punishment was imposed at death in the electric chair. The appeal is from the latter judgment.

As demonstrated by Judge Brett in his opinion, the confession of the offense charged subjects accused to the same punishment as if he were tried and found guilty by the verdict of a jury. In other words, the extent of the punishment, within the limits of the statute (21 O.S.1951 § 745 subd. A), was within the discretion of the trial judge.

Our duty from the record before us is to determine whether or not the trial judge may have abused his discretion in the matter of the assessment of the extreme penalty.

A single and extreme illustration for clarity would be that if defendant had in his attempt to escape sought to get the kidnapped person to drive him to a local point and he had refused, and defendant at gun point had taken the car and at some convenient place had forced victim out of the car without injury, and had used the car to get, say to the airport or railway

station in effecting an escape, the infliction of the death penalty in such a case, I think all reasonable minds would agree, would be an abuse of discretion.

In the within case where the trial court could not become aware of the facts and circumstances in the within case, except what he may, in spite of himself, have heard from news casts and gleaned from headlines in the press, matters he is presumed to have disregarded,[1] if he had failed to follow the procedure outlined by 22 O.S. 1951, § 973–975 inclusive, or if such procedure was waived without any stipulation or agreement as to the facts, it would be the idea of this writer that there would be nothing by way of a record to support the sentence imposed. Where there would be a trial and the court had heard evidence and the jury had found an accused guilty and left the assessment of the punishment to the court, under such circumstances, if neither the State nor the defendant requested opportunity to present further evidence in aggravation or mitigation, the court would have a basis in the record to guide him in the imposition of sentence, and there would be a basis for review by this court in case the accused should be dissatisfied with the amount of punishment assessed and appeal, as has been done.

The question here immediately forced, is whether or not the court erred by failure to require the State to produce testimony in support of the purported facts in the within case that the State had not been called on to prove by reason of the confession of the defendant, but which alleged facts were recounted to support the recommendation that the county attorney in conclusion made as to the amount of punishment to be assessed.

The statement of the county attorney prior to sentencing by the court has been detailed in Judge Brett's opinion. This statement was to cover both the armed robbery charge and the kidnapping charge. The court first considered the armed rob-

bery charge, was advised by both counsel for the defendant and defendant himself that the accused wanted to withdraw the former plea of "not guilty" and enter a plea of "guilty". The court was careful to question defendant as to whether he had been induced by any promise of leniency to change his plea, and advised defendant that he might receive a death sentence, and defendant said that he understood that. Defendant wanted to waive the two days continuance for sentencing and have the sentence entered immediately. The court asked the county attorney if he had any statement or record he wished to make, and he answered to the effect that he would like for his statement to cover both the cases—armed robbery and kidnapping. The court then announced that before he would pass sentence in case No. 16910, that he would take a plea in case No. 16911. No objection was interposed to this procedure, so the court stated to the defendant that the county attorney and defendant's counsel had advised the court that in case No. 16911, the kidnapping case where defendant had previously entered a plea of "not guilty", that he wished to withdraw such plea and enter a plea of "guilty". The court asked defendant if that was correct, and he answered, "Yes, sir", and the following then transpired:

"The Court:. Now, you understand the nature of this charge, do you?

"Mr. Williams: That's right.

"The Court: You understand, that it is a charge that is punishable with the extreme penalty of life imprisonment, or death in the electric chair?

"Mr. Williams: Yes, sir.

"The Court: In light of that knowledge and information and understanding, are you entering this plea freely and voluntarily upon your part?

"Mr. Williams: Yes, sir.

"The Court: Has there been any representations made to you by coun-

1. Harrison v. State, 95 Okl.Cr. 123, 240 P.2d 459; Herren v. State, 74 Okl.Cr. 432, 127 P.2d 384; People v. Riley, 376 Ill. 364, 33 N.E.2d 872, 134 A.L.R. 1261.

sel, or by anyone else, as to the sentence which you might expect from the court in this case?

"Mr. Williams: I was told I could expect the maximum.

"The Court: Of death in the electric chair?

"Mr. Williams: Yes, sir.

"The Court: In light of that representation made to you by your counsel, you wish to withdraw your plea of not guilty and enter a plea of guilty to the charge?

"Mr. Williams: Yes, sir.

"The Court: Upon your plea of guilty, charged with the crime of kidnapping as set forth in the information in case number 16911, the court finds you guilty of the crime and offense of kidnapping as set forth in the information. Do you have any statements you wish to make, or any legal reason to assign, why the court should not pass and impose sentence upon you, in accordance with your plea of guilty as charged?

"Mr. Williams: No, sir.

"The Court: As I told you in the other case, you have the right to have your sentence deferred for at least two days, by the court, before formal sentence is entered under your plea. You may waive that, however, and upon your request, the court may impose sentence immediately. What is your request?

"Mr. Williams: That you impose sentence now.

"The Court: At this time, without further delay?

"Mr. Williams: Yes, sir.

"The Court: Do you have any statement you wish to make, as counsel for this defendant?

"Mr. Woodson: I would rather reserve them if the court please.

"The Court: Very well. Now, Mr. Simms, as representing the State, you say you have some record you wish to make?

"Mr. Simms: If your Honor please, the position of the State will be explained to you by the County Attorney, Mr. Edmondson.

"The Court: Very well.

"Mr. Edmondson: If the court please, I think that your Honor should be fully advised of the facts in this case, before any recommendations should be made at all, as to the punishment, inasmuch as before your Honor appears only the informations charging each of these crimes, and the pleas of guilty which the defendant has made. Therefore, we have typed up a brief statement of the facts concerning both of these crimes and the actions of this defendant and the facts and circumstances that would be admissible in court on the trial of either of these cases, and rather than read the entire thing, I will make reference to it and then submit it to your Honor for reading it in detail, if that is the desire of the court.

"The Court: I would prefer that you just read it.

"Mr. Edmondson: All right, sir.

"The Court: In its entirety, then we will have it before the court without further delay."

The county attorney then proceeded to make his statements, and when he had finished detailing the facts in the armed robbery case he continued to tell about the kidnapping that followed defendant's efforts to escape from the scene of the robbery.

Mr. Woodson, counsel for the defendant, then interposed an objection to any statements by the county attorney as to the phases that followed the armed robbery. The court advised counsel that he was considering the statement as covering both cases, and counsel answered, "All right", but did except to the overruling of his objection.

The county attorney then completed the events happening from the moment of the kidnapping until the ministerial student was ejected from his car into the weeds with hands bound and shot to death. The following then transpired:

"Mr. Woodson: I would like again to interpose an objection here, that the defendant has pleaded guilty to two charges, one the armed robbery and one the kidnapping. The statements being made by the county attorney relate to another charge, that has been passed upon in another jurisdiction.

"The Court: Well, I will consider it as the statement of the county attorney of course and as a continuing thing in the matter, which I think is proper to advise the court of all the facts surrounding the two crimes. *Of course, as far as the highjacking case is concerned, it might not at all be competent,* but from the kidnapping standpoint, it is, of course, a continuing thing, as long as he had the victim in his charge and under his control, I think all the facts pertinent to the incident are competent to the court and the court should know, so I will overrule your objection.

"Mr. Woodson: Exception."

Counsel objected to the county attorney mentioning other crimes of defendant and the judge suggested to counsel that he would just give him an exception to the whole statement. When the county attorney completed his statement counsel for the defendant asked for and was granted a recess. After the recess, counsel for the defendant asked for a limited number of minutes to make a statement for the defendant, but the court advised counsel to take all the time he wanted.

Much of counsel's statement was devoted to the thought that the State was seeking retaliation and revenge and he presented a thesis against capital punishment. In the course of his statement, counsel for defendant said:

"In relation to the offense in Muskogee, in which he was charged with the crime of murder and there pleaded guilty, I should like to introduce the closing statements of the judge of that court in passing sentence upon the defendant, after he entered his plea of guilty and introduced the full context of it into the record."

The State offered no objection, and a transcript of the proceedings before the district court of Muskogee County, where defendant had been charged with the murder that was the culmination of the kidnapping in question, was received in evidence. It was the argument that in that the record from Muskogee County disclosed that the district court there had assessed only a life sentence for the murder that was the culmination of the kidnapping, that the district court of Tulsa County would not be justified in imposing a greater penalty.

The district court of Muskogee County did not hear any evidence nor statements in aggravation or mitigation of the charge of murder where defendant had entered a plea of guilty, so presumably he knew nothing of the facts of the charge. The court in his statement based his assessing the minimum penalty for murder of life imprisonment on his thought that the Criminal Court of Appeals had never affirmed the death penalty where an accused had thrown himself on the mercy of the court and entered a plea of guilty. Judge Brett in his opinion has cited a number of cases where this court has approved sentences where the death penalty was assessed on a plea of guilty. Other cases could have been cited.

The court further reasoned that there might be reversible error in the record if a certain confession were offered and received in evidence; and that defense counsel claimed that some jurors had not left the court room that morning before defendant was handcuffed, and that they may have seen him handcuffed.

Of course whether or not there might be error in the record, after record made, would be for the appellate court to determine and such probable questions should

have had no bearing on the determination of the amount of punishment to be imposed for the confessed murder.

The district court of Tulsa County no doubt pondered these things in resolving the contention that the action of the district court of Muskogee County should limit him in the sentence he might impose, and he refused to pass sentence immediately but set the case over for two days to February 1, 1957 at 9:30 a. m., at which time the following transpired:

"By the Court: Mr. Williams, you have heretofore appeared before this court, withdrew your plea of not guilty to the charge of robbery with firearms, as set out in the information, and entered your plea of guilty. You were advised of your rights in the matter. The court heard arguments in reference to the case, statement of facts were presented by the county attorney's office, the matter of formal sentencing was passed until this time at this hour, after the court found you guilty as charged in the information of the charge upon your plea of guilty. Now an intervention of time has come about since you entered your plea, and at that time, the court asked you if you had any statement to make or any legal cause why the court should not pass sentence upon you, and you said you had none. The court in taking up the matter at this time, I will give you an opportunity to make any statement, if you have a statement you wish to make, or show any legal cause why the Court at this time should not pass judgment upon you, in accordance with your plea of guilty.

"Mr. Williams: Well, one thing in the statement of facts, according—

"The Court: You understand this is only with the robbery with firearms charge, I am asking you now.

"Mr. Williams: Yes, sir. What I was going to say, according to the way Mr. Edmondson read the statement of facts, why I had been convict-

ed before,—oh, the way he said, three times of armed robbery. Now, actually I only had one previous felony conviction.

"The Court: And that was in—

"Mr. Williams: In Indiana.

"The Court: In Indiana, and you served a term for that?

"Mr. Williams: Yes, sir.

"The Court: Weren't you convicted of a charge in the Federal Court?

"Mr. Williams: Yes sir, but that was a Federal Juvenile—Under the Federal Juvenile Delinquency Act.

"The Court: You did serve a term and did escape from the reformatory, did you not?

"Mr. Williams: No, sir, I don't know as you could call it as an escape. I was working as a trusty up near Inglewood, and I just walked off.

"The Court: With that correction of the statement of facts, do you have anything else that you wish to state at this time?

"Mr. Williams: No, sir.

"The Court: What is your age?

"Mr. Williams: Twenty-seven."

The court next proceeded to pronounce judgment in case No. 16910; and then in case No. 16911 as follows:

"In case number 16911, State versus Edward Leon Williams, here charged with the crime and offense of kidnapping as set forth in the information. Upon arraignment upon this charge, appearing before the district court, you entered a plea of not guilty. The case was thereafter set upon the trial jury docket of this court. At a date prior to the setting of this case, you appeared in this division of the district court, and before this court, and expressed your desire to withdraw your plea of not guilty and enter a plea of guilty to the charge of kidnapping as set forth in the information. You were represented by counsel at all times, and advised of all your legal and constitu-

tional rights. Opportunity was given you and your counsel at that time, which was on Wednesday of this week, to make any statement that you cared to make, showing legal cause why judgment should not be pronounced and your punishment fixed by the court. Statements and arguments were made here in open court and made by the State and by your counsel in reference to the case, and in reference to the punishment. In this case, as in the other case upon which judgment has been passed by the court this morning, the court cognizant of the importance of the matter, and the seriousness of the charges, although you stated to the court that you were voluntarily making your pleas, without any influence being brought to bear upon you, or any promise of any results of the pleas, and stating you were cognizant of the facts, and had been informed that you might expect the extreme penalty in each and both of these cases, and that you were voluntarily making your plea of guilty to the charge. The court at that time passed the matter for sentencing until this morning to give all parties an opportunity for deliberating upon the matter. You come here at this time for formal sentencing under the judgment of the court which was entered on Wednesday, finding you guilty of the crime and offense of kidnapping as set forth in the information.

"Do you have anything further to state at this time, or any legal cause to show to the court, why the court should not fix and assess your punishment upon your plea of guilty to the charge of kidnapping as set forth in the information?

"Mr. Williams: No, sir.

"The Court: Now, at that time on Wednesday, there was a statement of facts made by the State relative to this case, and the sequence of events and the facts surrounding the sequence of events and the facts surrounding the commission of this crime. Do you have any correction to make in reference to the statement of counsel for the State, in that regard?

"Mr. Williams: No, sir.

"The Court: Those facts were true?

"Mr. Williams: Yes, sir.

"The Court: And you at this time admit that they were true and that you committed the acts as set forth by the State, that is correct, is it?

"Mr. Williams: Yes, sir.

"The Court: All right. Do you have anything further to say on behalf of this defendant?

"Mr. Woodson: Nothing further."

It is vital to note (1) that counsel for the defendant did not object to the procedure followed by the court in his determination of the sentences to be imposed in the two cases before him where the defendant had entered pleas of guilty; (2) that the only objections interposed by counsel for the defendant to the matters outlined and recounted by the county attorney to the court, and which he stated in effect was an outline of facts that would be admissible in evidence on trial, were objections in the armed robbery charge of a consideration of any of the facts involving the kidnapping case, and then in the kidnapping case to a consideration of what happened in Muskogee County at the termination of the kidnapping. The court ruled in favor of defendant's objection as to the armed robbery charge, but ruled that he had a right in fixing punishment in the kidnapping case, to consider all the facts from the beginning to the end of the kidnapping, which would include the fact of murder to which the defendant had previously pleaded guilty; (3) after the county attorney completed his statement of the purported facts counsel for the defendant made a lengthy statement and did not take issue with any purported fact, but sought to show that the district court of Muskogee County for the death of the kidnapped victim, had assessed only the minimum penalty of life imprisonment, and wanted the court to consider the reasons assigned by the judge, and there was

received in evidence the record made at time of imposition of sentence in Muskogee County, which has been heretofore outlined. After defense counsel's statement the court adjourned until February 1, 1957 at 9:30 a. m. for pronouncing sentence in the two cases.

On reconvening on February 1, 1957, the court asked defendant if he had any corrections to be made in the statements made by Mr. Edmondson, county attorney, and he claimed that he had previously served only one felony charge; that his other crimes were committed when he was a minor and that he was prosecuted under the Federal Juvenile Delinquency Act. The court accepted the corrections. The court then repeatedly asked the defendant as to the correctness of the statement made by the county attorney as to the purported facts, and defendant in effect stated the county attorney's statement was a truthful statement of the sequence of events and facts surrounding the commission of the crime. This was equivalent to a stipulation.

Under the circumstances recounted, I agree that it was not necessary for the State to put on evidence in proof. The crime was admitted, and the circumstances surrounding the commission thereof were admitted, so to call witnesses and offer proof would be just taking up the time of the court to prove something where no proof was required.

The crimes of kidnapping, 21 O.S.1951 § 745, and of murder 21 O.S.1951 §§ 701, 707, are separate offenses, with jurisdiction in two separate courts. The action of the district court of Muskogee County, acting first, did not bind the district court of Tulsa County. Where the maximum sentence in each charge was the same, but where the first court had failed to assess such sentence. It was the duty of the district court of Tulsa County to consider the background of the defendant, the probabilities of rehabilitation, and all the facts and circumstances surrounding the kidnapping. The court had to satisfy his own mind and conscience as to the penalty to be assessed, and the court was certainly interested in the question of whether the kidnapping victim was ever liberated, and if so, if he was unharmed. The record showed that he was marched out with hands bound and shot and abandoned, thus his soul liberated to his Maker, and his body to the earth.

It is concluded that the extent of the punishment within the limits of the statute, was within the discretion of the trial judge, and no abuse of such discretion is apparent. I discover no violation of due process.

The record does not justify further consideration of the question of double jeopardy than has been treated by Judge Brett. Such question was not raised in the trial of the case.

Subject to the thoughts expressed and with all respect to the dissent by Judge NIX, I reiterate my concurrence in the opinion promulgated by Judge BRETT.