In the Matter of the Habeas Corpus of James A. COLEMAN, No. 58654.

No. A–12784.

Court of Criminal Appeals of Oklahoma.

Oct. 14, 1959.

James M. May, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for respondent.

## PER CURIAM.

James A. Coleman, petitioner, is confined in the State Penitentiary at McAlester, serving a life sentence by reason of the entry of a plea of guilty in the district court of Sequoyah County to a charge of murder.

The record shows that at the time of the entry of the plea in question, petitioner was a soldier stationed at Fort Chaffee, in Arkansas, near Fort Smith. He is a Negro, and the victim was an eighteen-year-old Negro girl. Petitioner was a married man and the girl was also married, but he alleges she was on the way by automobile to Muskogee with petitioner. Petitioner alleges that he was drinking, and that the girl was hysterical for a "fix", she being a dope addict. That he knew nothing about a "fix" and offered the woman a drink and they got into a fight and he choked her, but did not intend to seriously hurt her.

That he got water and bathed her face, but to no avail. He was subsequently arrested and placed in jail at Fort Smith. He states, and it is not refuted, that he had never been in trouble with the law before, and knew nothing whatever about his constitutional rights, or court procedure. That he asked the county attorney, who appeared at the jail in Fort Smith shortly after his arrest, to permit him to consult his commanding officer, or the government CID officers at Camp Chaffee. His request was ignored and he was told that if he stood trial he would probably "get the electric chair", and that the best thing for him to do was to plead guilty, because he had admitted choking the girl, and that if he did, a life sentence would be recommended. It appears that the formality of extradition proceedings were not gone through; presumably this was waived, although the record is silent.

Petitioner says that he was frightened and inexperienced; that on the morning of October 4, 1956 he was taken from Fort Smith to Sallisaw, Oklahoma, and required to sign various papers; went before a judge and was sentenced to life imprisonment and was on the same day incarcerated in the State Penitentiary.

Petitioner claims that by reason of being frightened by the county attorney, and after he was refused permission to consult the military authorities or even to have his wife present and explain to him what was being done, that he just did everything he was told to do. He says that he did not understand the charge or the various degrees of the crime with which he was accused as applicable to his theory of the case. That he did not have any one explain to him his rights other than the county attorney who had put him in fear of the electric chair and had him in a frame of mind to do anything to escape that fate. Although the petition was filed pro se, at hearing before this Court petitioner was represented by counsel of his choosing. And it is earnestly contended that by reason of the facts recited, petitioner never did effectively waive his constitutional

right to advise with counsel and to be tried before a jury, and that the court lost jurisdiction to impose sentence.

The State in response does not deny that petitioner was brought into Oklahoma on October 4, 1956; was transported from Fort Smith to Sallisaw that day, taken before an examining magistrate and thereafter arraigned in the district court, entered a plea of guilty and on the same day was incarcerated in the State Penitentiary to serve a life sentence.

█ To excuse all this speed the State contends, and the record says, that the defendant's constitutional rights were explained to him and he waived them. And ordinarily, the law so permits. But as said in Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 323, 92 L.Ed. 309–318, and quoted by this Court with approval in Application of Kinnison, Okl.Cr., 335 P.2d 645:

> "The fact that an accused may tell him [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishment thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered."

The evidence does not disclose that such a penetrating examination was here made. It could not be expected that the prosecuting attorney would tell the prisoner, as in this case, more than the fact that the extreme penalty was death and that prisoner was entitled to an attorney and to a trial before a jury, but to avoid the possibility of death he should plead guilty and in such case a life sentence would be recommended. So conditioned, the further waiver of extradition, time to plead and all other rights would be perfunctorily waived.

All this could have been obviated, if not by the penetrating questioning, by granting an ignorant man who plainly did not understand the full import of the words of the English language spoken to him, permission to consult his commanding officer, the CID or even his wife, with the probable consequence that the Court would have appointed counsel to consult with the accused and understandingly advise him of his rights, and the possible punishment if his theory of the case was believed by the jury.

█ The fact is that under circumstances where the death penalty may be assessed, the court should always appoint counsel to consult with a prisoner and not accept a plea until counsel has ample opportunity for such consultation.[1] Particularly is this true where the accused has no former record of convictions, is ignorant, illiterate or of the apparent intelligence of a moron.

█ The speed with which the petitioner was whisked from an adjoining state, apparently waiving every right given him by the constitution when from the admissions he might have at the hands of a jury received much lighter punishment than was assessed by the court, supports his evidence that he was so frightened by the ultimatum that he would be given a death sentence if he did not waive all rights and plead guilty, that he was thereby conditioned to do anything asked of him.

█ Of course on trial the evidence might justify and cause the jury to assess the extreme penalty or a life sentence. On

1. See case where even though accused had counsel there were penetrating questions as to defendants entry of a plea of guilty. Williams v. State, Okl.Cr., 321 P.2d 990, affirmed 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516, petition for rehearing denied 1959, 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed. 2d 763.

the other hand they might, as suggested, assess a much lighter sentence. At all events, from what has been said in Application of Kinnison, supra, and cases cited, it is our opinion that the trial court was without jurisdiction to pronounce the judgment and sentence rendered. The writ of habeas corpus is accordingly granted, with directions that the plea, judgment and sentence be vacated and that petitioner be rearraigned and proceeded against therefrom on the information.

The Warden of the State Penitentiary is directed to deliver the petitioner, James A. Coleman, No. 58654, to the custody of the sheriff of Sequoyah County, Oklahoma, to await the further action of the district court of such County.